PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.* MOORE, ADMINISTRATOR OF SALGUE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 47.   Argued November 6, 1913.—Decided December 22, 1913.

*Aetna Insurance Co.* v. *Moore, ante,* p. 543; followed to effect that it was error not to charge the jury that a statement made by an applicant for life insurance that he had never been rejected by any company, association or agent after he had withdrawn an application on the advice of the medical adviser with knowledge that the company for whom the examination was made would reject him, is material and untruthful.

Where the policy itself expressly provides that it cannot be varied by anyone except an officer of the company issuing it, the company is

not estopped to contest the policy on the ground of misrepresentations or concealment in the application because its agent has knowledge of actual conditions.

THE facts, which involve the validity of a verdict and judgment on a policy of life insurance, are stated in the opinion.

*Mr. Eugene R. Black,* with whom *Mr. Sanders McDaniel* and *Mr. Edward D. Duffield* were on the brief, for petitioner.

*Mr. Minter Wimberly,* with whom *Mr. Alexander Akerman* and *Mr. Jesse Harris* were on the brief, for respondent.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action upon a policy of insurance for $5,000 issued by petitioner, herein called the insurance company, upon the life of John Andrew Salgue. It was consolidated and tried with the case against the Aetna Company, and resulted in a verdict for the amount of the policy, upon which judgment was entered. It was affirmed by the Circuit Court of Appeals and the case was then brought here. Though consolidated in the District Court with the other case, it is here upon a separate record and submitted upon a separate argument. It, however, involves some of the same fundamental questions.

Salgue, in his application for insurance, declared and warranted that he was in good health and that all the statements and answers to the questions put to him were complete and true, and that the declaration should constitute a part of the contract of insurance applied for. He further agreed that the policy should not take effect

until the same should be issued and delivered by the company while his health was in the same condition as described in the application.

Certain provisions were made part of the policy, among others, that "no agent has power in behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to waive any forfeiture or to bind the company by making any promise, or making or receiving any presentation or information."

On the medical examination he declared as follows: "I hereby warrant that the answers to these questions are true and correct, and agree that they shall form a part of the contract of insurance applied for." The questions in the application and the answers thereto were as follows:

"Has any company or association ever declined to grant insurance on your life, or issue a policy of a different kind or for a sum less than that applied for?"

Answer: "No."

"If 'yes,' give name of company or companies and when."

(No answer was given to this question.)

"Is application for insurance on your life pending at this time in any other company; if so, give the name of the company."

Answer: "Yes; Provident Savings Life."

"When were you last attended by a physician?"

Answer: "Early spring of 1905."

"For what complaint?"

Answer: "Bilious fever, two days."

"Have you ever had any serious illness?"

Answer: "No."

"Are you in good health?"

Answer: "Yes."

There was testimony in the case tending to show that these answers were untrue; that he had chronic acid

gastritis and heart disease and that other applications for insurance were pending, and others not granted. And it is urged that, the answers to the questions above stated being in the negative, he omitted to answer other questions which were material to be answered in order to make his statement complete and truthful; that, therefore, his omission to answer amounted to a fraudulent conceal- ment.

Error is assigned on the ruling of the court refusing to direct a verdict for the insurance company and refusing certain special instructions.

The policy is conceded to be a Georgia contract and it is contended that the warranties contained in the applica- tion were all material to the risk and that they were all broken (1) because the evidence showed that the answers to the questions were false, thereby avoiding the policy; (2) the policy was not delivered to Salgue while he was in good health, that being a condition precedent to its taking effect, and (3) the policy was void by reason of incom- plete and untruthful answers. This, it is urged, is the effect of the Georgia law, which, while it modifies the imperative character of statements by an applicant for insurance as warranties, yet provides that any variation from the facts stated "by which the nature, or extent, or character of the risk is changed will void the policy." Section 2479, Code of Georgia.

The insurance company, therefore, to sustain its con- tention that a verdict should have been directed for it, must establish that the representations were material to the risk and that they were untrue. Whether they were untrue is a question of fact and as the proposition of law which the insurance company relies upon is exhibited by the special request we shall pass to the consideration of the latter. It presents the question of the materiality of Salgue's statements to the risk as one of law. The court submitted it to the jury as a question of fact and

made as elements of decision Salgue's motive, his good
or bad faith, his mistake or fraud in making the repre-
sentations. This, we think, is the sense conveyed by the
charge of the court, as we said in *Aetna Life Ins. Co.* v.
*Moore*, just decided, notwithstanding there are here and
there qualifying words and a distinction made between
misrepresentation of facts and the concealment of them.
A few excerpts from the charge will illustrate this. After
defining a warranty the court said: "On the other hand,
representations are statements made to give information
to the insurer, and otherwise induce it to enter into the
insurance contract and unless *distinctly material and made
with fraudulent purpose* (italics ours), do not void the
policy. . . . Substantial integrity of conduct on the
part of both insurer and insured is the prime object the
law seeks to obtain. . . . The law of Georgia, while
requiring that every application for insurance must be
made in the utmost good faith, and that representations
are considered as covenanted to be true, otherwise the
policy will be voided, also provides that a failure to state
a material fact, if not done fraudulently, does not void
the policy. On the other hand, the wilful and fraudulent
concealment of such a fact which would enhance the risk
of the company will have the effect to void it. What is
here stated to be true of wilful concealment is also true
of wilful misrepresentation by the applicant to his agent
as to any material inquiry made. It follows that under
the law of Georgia, a misrepresentation in statement or
a concealment of fact must first be material, or must
be wilfully or fraudulently made in order to annul the in-
surance."

After further explanation, the court said:

"These are the general principles. To make them dis-
tinctly applicable to your duty, you are instructed that
you must determine from all the facts, first, did Salgue
make a misrepresentation or concealment of a fact of

which he had knowledge? If he did not, the defense on this point must fail. Second, if he did, was such misrepresentation or concealment so material that it would have influenced one or both of the defendants not to issue the policy of insurance upon the respective applications? And, third, in connection with this your inquiry will be, if such material misrepresentation or concealment as would have caused the defendants or either of them to withhold insurance was made, was it by Salgue wilfully or fraudulently done. In the absence of wilful or fraudulent misrepresentation or concealment of a material fact, the policy stands good and the insurance company must pay what it promised to pay by its policy, when it accepted the premium of the applicant."

This being the charge of the court, wherein did it militate against the special request which is as follows:

"The defendant, The Prudential Insurance Company of America, requests the court to charge as follows:

"Question 4–B of the application of said John A. Salgue to the said The Prudential Insurance Company of America is as follows: 'Has any company or association ever declined to grant insurance on your life or issued a policy of a different kind or for a sum less than that applied for? (Answer 'Yes' or 'No')'. The answer to this question is 'No.'

"The defendant insists that this answer is false and says that the said Salgue in the month of June, 1905, prior to the time of making this application, applied to the Penn Mutual Life Insurance Company for a policy, and was declined. If you believe from the evidence that the said Salgue made application to Anderson Clark, the agent for the Penn Mutual Life Insurance Company, for insurance and that this application was signed by the said Salgue, and that this application was handed by the said Anderson Clark, as agent for the Penn Mutual Insurance Company, to Dr. Little, Examiner for the said

Penn Mutual Company, for examination and that Dr.
Little, as said Examiner, examined the said Salgue and
stated to the said Salgue that he had heart trouble and
that for this reason he could not pass him, then I charge
you that this would amount to a declination by the Penn
Mutual Life Insurance Company of the application for
insurance made to it by the said Salgue, and if you believe
from the evidence that such application was made and that
such declination was made, then I charge you that the
answer of Salgue to this question was false and that it
was warranted to be true and that it was as to a material
matter which would tend to change the nature, extent
and character of the risk assumed and that in this event
plaintiff could not recover."

It is contended that the instruction was "legal and
pertinent" to the issue and was not incorporated in the
charge of the court. The court, we have seen, did not
incorporate the instruction in its charge, and that the
instruction was legal and pertinent to the issue be-
tween the parties is shown by the opinion in the *Aetna
Case.*

The instruction based on the facts stated was peremp-
tory of the right of the insurance company to recover.
But respondent contends that the requirement was either
void or that the agent of the company wrote down and
reported the answer, knowing the facts, and therefore the
company is estopped to dispute the correctness of the an-
swer or its completeness. There was testimony in the
case upon which the contention could be based. But the
case was not submitted to the jury in that view. This
phase of the case, as its other phases, was made to turn
upon the good faith of Salgue, not upon the materiality
of the fact or the action of the agent of the insurance
company. The court stated to the jury that the contention
of the insurance company was that the transaction with
the Penn Mutual showed a rejection of Salgue's application

by that company, "to be determined by the court as a matter of law." With the contention the court said it was unable to agree, "and leaves the question to the jury, it being a mixed question of law and fact."

The testimony in regard to the application to the Penn Mutual is the same as in the *Aetna Case.* We need not repeat it. It may be that it cannot be literally said that any company or association had rejected an application by Salgue. If that had been the question, and regarding sense, rather than form, it could be contended that the answer was untruthful. But the question asked Salgue was broader. He was asked "if any company or association ever declined to grant insurance" on his life, and the further question was put: "If so, give the name of the company or companies," to which he gave no answer. He was also asked, "Is application for life insurance on your life pending at this time in any other company; if so, give the name of the company?" To the latter question he answered: "Yes; Provident Savings Life." At that time he had an application pending with the Sun Life Insurance Company of Canada. The answers were, therefore, not true, and we think that they were material to the risk within the meaning of the Georgia Code. *The Aetna Insurance Company* v. *Moore, ante,* p. 543.

It is contended here, as in the *Aetna Case,* that the company is estopped by the knowledge of the agent, and the same cases are cited as were cited there. We answer here, as we answered there, that the terms of the policy constituted the contract of the parties and precluded a variation of them by the agent. We may, however, observe that Salgue did not inform the medical examiner in this case, as he did in the *Aetna Case,* that he was told he had heart disease. In other words, he made no communication to the examiner which modified in any way the positive character of his answers to the questions put to him. The testimony is conflicting as to the in-

formation he gave to the agent of the company, who, the evidence shows, prepared the application.

We think, therefore, that the court erred in refusing the special request.

It is also contended, as it was in the *Aetna Case*, that the District Court erred in consolidating the causes, and it must be admitted that petitioner here has more ground of complaint of the ruling than the Aetna Company. We are, however, not required to pass upon the contention, though, as we said in the other case, there are grounds for it.

*Judgment reversed and cause remanded to the District Court for a new trial.*

MR. JUSTICE PITNEY dissents.