## NEW YORK LIFE INS. CO. v. GOERLICH.

(Circuit Court of Appeals, Sixth Circuit. March 12, 1926.)

No. 4191.

1. Insurance ⬤⟞650—Insurer's refusal to furnish beneficiary copy of application, photostatic copy of which was attached to policy sued on when issued, held not to render application inadmissible (Gen. Code Ohio, §§ 9387, 9388, 9389).

Gen. Code Ohio, §§ 9387, 9388, apply to policies in existence when enacted, and section 9389 to all future policies as of date of issuance, so that refusal of insurer, which attached photostatic copy of application to policy sued on when issued, after such enactment to furnish copy to beneficiary, did not render application inadmissible in evidence.

2. Insurance ⬤⟞300—Submission to examination, with intent to make formal application for policy, if examiners thought acceptance likely, was "application," within representations concerning prior applications to other companies.

Submission to medical examination at instance of insurance company's general agent, with intent to make formal application for policy if examiners thought acceptance would result, was an "application," within representations concerning prior applications to other companies.

3. Insurance ⬤⟞646(5).

There is no presumption that agent, accepting application with knowledge of insured's rejection by another company, communicated information to insurer.

**4. Insurance ⊚⟹378(1)—False representations as to rejections by other companies and medical consultations and treatment held good defense to action on policy, where soliciting agent knew of rejection by only one company (Rev. St. Ohio 1880, § 3625, now Gen. Code Ohio, § 9391).**

Insured's false representations in application that no application for insurance on his life had ever been rejected, that no company had ever examined him on application without issuing insurance, and that he had consulted or been treated by no physicians within certain time, *held* good defense to action on policy, under Rev. St. Ohio 1880, § 3625, now Gen. Code Ohio, § 9391, where soliciting agent knew of insured's rejection by only one of two companies.

**5. Insurance ⊚⟹668(7).**

False representations concerning prior applications for insurance and rejections *held* material as matter of law.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; Paul Jones, Judge.

Action by Kate Goerlich against the New York Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed.

Francis J. Wright, of Columbus, Ohio (Louis H. Cooke, of New York City, Arnold & Wright, of Columbus, Ohio, and Ritter & Schminck, of Toledo, Ohio, on the brief), for plaintiff in error.

Silas E. Hurin, of Toledo, Ohio (Hoke Donithen, of Marion, Ohio, on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. This is an action on an insurance policy for $5,000, issued April 28, 1922, upon the life of Alpha S. Goerlich, who died August 2, 1922. There was a judgment in the District Court for the beneficiary, wife of the insured. The defense was false representations material to the risk, inducing the company to issue the policy. The refusal of the court to instruct the jury to return a verdict for defendant on that ground is one of the assignments of error. Before discussing it we refer to an affirmative plea of plaintiff, claimed by her to constitute a bar to the introduction in evidence of the application for insurance, which contained the representations relied upon by defendant.

[1] On November 16, 1922, plaintiff, through an attorney, requested of defendant a certified copy of the application. This request was declined, by reason of which it is argued, under sections 9387, 9388, 9389, General Code of Ohio,[1] that the application was inadmissible in evidence. So far as we have been able to ascertain—and indeed it seems to be admitted—life insurance companies were not required in Ohio, prior to the enactment of this statute, to attach to a policy of insurance or to furnish to the insured a copy of the application therefor. But see also G. C. § 9420 (3). The manifest purpose of the statute was to place in the hands of the policy holder a copy of his application for the policy. The several sections are to be construed in pari materia. If they are to be regarded as separately applicable to all policies, rather than applicable to different policies so as to effectuate the general purpose indicated, the requirements would seem to be duplicative, since the third section accomplishes, as to policies issued

---

[1] Section 9387: "*Policy Holders Entitled to Copies of Applications.*—Every person holding a policy of insurance issued by a company on the life of any person shall be entitled to be furnished by the company with a copy of any application or document, either written or printed, or both, held by it, upon which such policy was issued, or which may affect its validity. Upon demand made for such copy, by the holder of a policy, or by any person upon whose life it was so issued, the company shall make and forthwith furnish to such person, a certified copy of all such applications or friends' certificate, under the hand of the president, secretary, or other proper officer of the company, and under its seal. (R. S. § 3621.)"

Section 9388: "*Effect of Failure to Deliver Copies.*—If such company neglects or fails for thirty days from the time of such demand to furnish to such person a copy of all papers mentioned in the next preceding section, and as provided therein, it thereafter shall be forever barred from setting up, by way of defense to a suit on the policy of insurance, any error or incorrectness, or fraud or misrepresentation of the person making them, or any mistake therein whatever; and such application or other paper or document shall thereafter be taken and held, so far as it may affect any claim under such policy, or fund secured thereby, to be in all respects true and correct. (R. S. § 3622.)"

Section 9389: "Every company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a full and complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects so to do, so long as it is in default for such copy, shall be estopped from denying the truth of any such application or other document. In case such company neglects for thirty days after demand made therefor, to furnish such copies, it shall be forever barred from setting up as a defense to any suit on the policy, any incorrectness or want of truth of such application or other document."

after its enactment, the design intended to be effected under the preceding provisions. There has been no construction of the act by the Supreme Court of the state. It is our view that sections 9387 and 9388 were intended to apply to policies in existence at the time of the enactment, and section 9389 to all future policies as of the dates of issuance thereof. We accordingly hold that failure to comply with the request of November 16th did not operate as a bar to the introduction in evidence of the application, a photostatic copy of which was attached to the policy when issued and was so attached at the time the request was made.

Coming, then, to the question which we think decisive of the case, i. e., whether the insured made false and fraudulent representations of fact material to the risk inducing the company to issue the policy, we are met with a statute which provides:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is willfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer." Gen. Code, § 9391; R. S. § 3625; 70 Ohio Laws, 97–99 (April 2, 1873).

This was held to be a constitutional enactment in Insurance Co. v. Warren, 21 S. Ct. 535, 181 U. S. 73, 45 L. Ed. 755.

Defendant pleaded and proved that the application on which this policy was issued contained the following questions and answers:

"9. No insurance, no application for insurance, or for the reinstatement of insurance, on my life, has ever been declined except as follows: (If none, say none.) No."

"7–2. Has any life insurance company or society ever examined you, either on an application for insurance, for reinstatement of insurance, or for any other reason, without issuing or reinstating such insurance? A. No."

"9. E. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? (If none, so state.) None."

It is claimed that these answers were untrue, and that their patent falsity, as shown in the evidence, carried an implication of fraud, except for which the policy would not have been issued.

It appears that Huhn, an agent for defendant, in conjunction with Knauss, an agent of the Ohio State Life Insurance Company, secured Goerlich's application, and that Knauss informed Huhn that he (Goerlich) had "some heart trouble." Huhn testified that he asked Knauss whether his company had issued a policy, to which the latter replied, "I don't think they have;" that he knew Knauss represented the Ohio Life; on visiting Goerlich at his home, he said, "I guess you know what we are here for, so there was not much of a conversation took place;" and "Mr. Goerlich said nothing to me about heart trouble—just Mr. Knauss." The witness admitted that he assumed he would not have been called on to write the policy if Knauss could have written it in his own company. Another agent for the Ohio Life testified that he called on Huhn at his office, "explained to him that I had written this man [Goerlich], and he was rejected in our company."

[2] It was proved by defendant that Goerlich was examined in 1921 at the instance of an agent of the Equitable Life of Iowa for a policy of $10,000, and rejected as noninsurable. The examination by two physicians disclosed, as they said, organic heart murmurs and a hypertrophied heart, with an aortic stenosis, which is an enlarged heart with a roughness of one of the valves. On April 27, 1921, he applied for a $5,000 policy in the Ohio Life, was examined by two physicians, who testified that he was then suffering from a hypertrophied heart, and was refused insurance. He did not make written application to the Equitable of Iowa, but there was not the less an application, for at the instance of and accompanied by the company's general agent he sought and submitted to a medical examination with the view of making formal application if the examining physicians thought he would be accepted. Life Insurance Company v. Moore, 34 S. Ct. 186, 231 U. S. 557, 58 L. Ed. 356.

The evidence as to medical consultations and treatment within the preceding five years is undisputed. One witness testified that he had attended deceased two or three times within that period during acute illnesses, once during the influenza epidemic of 1919–20. Another, introduced by plaintiff, said that deceased was in his office twice a week during the months of May, June, and July, 1921; that his ailment at that time was influenza or catarrhal disturbance, which the

witness thought was caused from working in hay. His uncle, who was a physician, treated him at one time within the five years for pains in his side, back, and shoulder.

[3, 4] It may be fairly said that Huhn was advised of the rejection of Goerlich by the Ohio Life. But, in the circumstances, there is no presumption that the agent communicated this information to the officers of the company charged with the responsibility of accepting or rejecting the application. Insurance Company v. Hilton-Greene et al., 36 S. Ct. 676, 241 U. S. 613, 60 L. Ed. 1202. The company, it is true, cannot rely on the falsity of the representation as to the Ohio Life, because of the knowledge of the agent, which, under the statute, bars the defense. The agent's knowledge, however, did not relieve the applicant of the duty of stating the facts as to other applications, of which neither the agent nor the company was informed; and there is, we think, no evidence to the effect that the company knew Goerlich had been rejected by the Equitable of Iowa. So his answers to questions 7–2 and 9 were not only untrue, but were palpably so beyond the knowledge of the agent as to his relation with the Ohio Life. Prudential Insurance Co. v. Moore, 34 S. Ct. 191, 231 U. S. 560, 58 L. Ed. 367. Equally untrue was his response to inquiry 9–E with respect to medical consultations and treatment.

[5] We are not called on to determine on the conflicting evidence whether Goerlich was afflicted with a heart affection, since the pertinent inquiry relates to previous applications and examinations for insurance as well as medical treatment. Determinative of that are his answers to questions 9 and 7–2, which were so flagrantly false as to imply willfulness and amount to fraud. It is not necessary to consider in the light of Jeffries v. Insurance Co., 22 Wall. 47, 22 L. Ed. 833, and Insurance Co. v. France, 91 U. S. 510, 23 L. Ed. 401, the effect of the clause in the application making each representation and answer therein material to the risk, for independently of that question the misrepresentations of fact on these two inquiries (we do not pass on the materialty of the answer to inquiry 9–E) were clearly material as a matter of law. Insurance Co. v. Packing Co., 260 F. 641, 171 C. C. A. 405; Ætna Insurance Co. v. Moore, 34 S. Ct. 186, 231 U. S. 543, 58 L. Ed. 356, and Mutual Life Ins. Co. v. Hilton-Greene et al., supra. Moreover, evidence was offered to the effect—though not admitted—that the policy would not have been issued,

had the facts been known to the company. Hence the conditions precedent to the admission of the application in evidence were met, and, the false representations being material, the policy under the authorities cited is unenforceable. We conclude, therefore, that the court should have directed a verdict for defendant.

Judgment reversed.