## COLUMBIAN NAT. LIFE INS. CO. v. HARRISON et al.

(Circuit Court of Appeals, Sixth Circuit. May 20, 1926.)

No. 4148.

**1. Courts ⬿328(1).**

Penalty recoverable under statute for refusal to pay insurance policy may be added to determine amount involved for jurisdictional purposes.

**2. Courts ⬿406(2).**

Omission of record in federal appellate court to show requisite diversity of citizenship may be supplied after remand.

**3. Courts ⬿372(6)—Insurance ⬿152(3).**

State statutes enter into and form part of insurance contracts, and federal courts will give them effect as locally interpreted.

**4. Insurance ⬿300—False denial in application of previous rejection for life insurance avoids accident and health policy (Shan. Ann. Code Tenn. § 3306).**

A false denial in an application for accident and health insurance of a previous rejection of the applicant for life insurance is material to the risk, and renders invalid a policy issued thereon.

**5. Insurance ⬿256(2).**

False representation in application of matter which increases risk avoids the policy, though made in good faith, under Shan. Ann. Code Tenn. § 3306.

**6. Insurance ⬿300, 668(6)—Whether rejection for life insurance is material to later accident risk must be determined in each case on its own facts, and may be question for jury.**

A rejection for life insurance of itself does not raise such a presumption or inference of unfitness as justifies a rule of law that it is material to a later accident risk, but each case must be considered on its own facts, and the question may be one for the jury.

**7. Insurance ⬿141(4)— In suit on policy containing copy of application, insured is estopped to deny that he signed any application.**

Where a policy, when delivered, contained and made part thereof a copy of the application, purporting to bear signature of insured, he cannot bring suit on the policy and in the same suit deny that he signed any application.

**8. Insurance ⬿602—Statutory penalty for refusal, not in good faith, to pay insurance loss, not recoverable, when there was substantial ground for refusal (Shan. Ann. Code Tenn. § 3369a141).**

Shan. Ann. Code Tenn. § 3369a141, providing for recovery of a penalty where refusal of

an insurance company to pay a loss was not in good faith, does not authorize the recovery where there were substantial legal grounds for contesting the claim.

In Error to the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Action at law by Ralph W. Harrison and another against the Columbian National Life Insurance Company. Judgment for plaintiffs, and defendant brings error. Reversed.

Two insurance agents, soliciting accident insurance for the Ætna Company in November, 1917, prepared Harrison's applications for two policies in that company, and he signed them. A few days later the agents returned and told Harrison that they had been able to get for him in the Columbian Company better policies for less money than in the Ætna. They were provided with the two Columbian policies, ready for delivery upon the signing of proper applications. They had prepared these applications, as they said, by copying into them the answers which Harrison had given upon the Ætna applications. Thereupon the two policies were delivered to him, and he signed the new applications. In fact, the Ætna applications had been turned in to the general agent of that company at Nashville, who had rejected them because Harrison had a disquieting accident history; but Harrison did not know of this rejection.

These soliciting agents reported to the general agent of the Columbian Company at Nashville the delivery of the policies, and he reported to the home office at Boston. After about 10 days the home office decided not to carry the risk, and instructed the Nashville agent to cancel; but, in the meantime, Harrison had suffered an accident which caused the loss of his right hand by amputation. Eventually two suits were brought upon these two policies, were consolidated for trial in the court below, and resulted in a verdict and judgment for the plaintiff for the full amount upon both policies, in addition to a penalty of 25 per cent. imposed by the Tennessee statutes for a bad faith refusal to pay. This writ of error not only challenges the propriety of the penalty but presents questions as to the effect of misstatements made in the applications.

There are two Tennessee statutes which are thought to be important. The first is section 3306 of Shannon's Annotated Code, reading as follows: "No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation [or warranty] is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

The second is found in Shannon's Code, § 3275a2, reading as follows: "Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect. * * * "

One of the policies sued upon gave indemnity for accident or illness; the other for accident only. The applications were in identical form. Each policy provided, among other things:

"General Provisions.—1. * * * This policy, with a copy of the application and any other papers, attached to or indorsed hereon, constitutes the entire contract. No agent has power to waive or alter any of the provisions of this policy, and no change in its printed conditions shall be valid unless contained in an endorsement attached hereto, and signed by the president or secretary.

* * * * *

"10. This policy is issued in consideration of the statements made in the application and of the payments of the premium," etc.

Indorsed upon each policy before delivery, under the heading "Copy of Application," and as required by the Tennessee statute (Shannon's Code, 3275a1, note 12), was the copy thereof, parts of which are as follows:

"Application is hereby made for a policy to be based upon the following statement of facts: The statements in each of the numbered sections are warranted to be true. * * *

"13. No application ever made by me for accident, health, or life insurance has been declined or restricted, except as follows: No exception.

"14. No accident, health, or life insurance issued to me has been canceled, or renewal refused or restricted, nor have I made any application for such insurance, concerning which I have not been notified of the action taken except as follows: No exception."

The testimony showed that these answers were incorrect in these particulars (excepting as uncertainties are later stated):

(1) The Mutual Benefit Life Insurance Company, in August, 1914, had examined Harrison for life insurance and declined the risk.

(2) In March, 1917, an accident policy which had been issued to Harrison by the Maryland Casualty Company, was canceled, and at about the same time there was a cancellation of a similar policy by the General Accident Company.

(3) Applications for policies similar to those in suit had within a few days been refused by the Ætna Company.

Some reference is made also to a false answer to question 19 relating to family history of tuberculosis; but no such defense was set up in the pleas, upon which the case stood for a long period, and, indeed, no amendment was asked, even upon the trial. The subject-matter of this question 19 is therefore immaterial.

John B. Keeble and A. W. Stockell, Jr., both of Nashville, Tenn. (Keeble & Seay, of Nashville, Tenn., on the brief), for plaintiff in error.

T. T. McCarley and Nathan Cohn, both of Nashville, Tenn. (J. G. Stephenson, of Nashville, Tenn., on the brief), for defendants in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1-3] The record does not show diverse citizenship, although it probably exists. This should be made to appear properly to the court below; in default, the cases, after remand, should be dismissed for that reason. Realty Holding Co. v. Donaldson, 268 U. S. 398, 400, 45 S. Ct. 521, 69 L. Ed. 1014. The penalty claimed under the smaller policy may be added to the policy loss to make the necessary $3,000. Nathan v. Rock Springs Distilling Co. (C. C. A. 6) 10 F.(2d) 268, January 7, 1926. These Tennessee statutes, as construed by the Supreme court of the state, enter into and form a part of the insurance contracts, and this court will follow their directions and their local interpretation. Sims v. American Cent. Ins. Co. (C. C. A. 6) 296 F. 115.

[4] In the suit on the health and accident policy, No. 124331,. a verdict for the defendant should have been directed on account of the Mutual Benefit rejection.[1] It seems clear

that, as to the materiality of the false answer in this particular, the case upon this policy stands upon the same basis as if on a life insurance policy. The reasons which make such representations material to the risk of life insurance apply with full force to health insurance, and though this was a health and accident policy, and the recovery sought is solely under the accident provision, we see no way by which, from this point of approach, the policy may be valid for accident and invalid for health. The two liability covenants are not separable; they are purchased by one consideration, which is not in any way apportionable. Hence, if the false answer avoided the health insurance, it necessarily avoided. the accident insurance.

The Supreme Court of Tennessee, in Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 532, 194 S. W. 581, L. R. A. 1917E, 554, has considered the effect of this statute, and has decided that a false denial of a previous rejection for life insurance is ipso facto material to the risk and avoids the later life policy. It may not be clear whether this is so far a construction of the statute, rather than a conclusion as to a general rule of insurance law, that we are bound to follow the decision; but that is immaterial, because the federal rule is clearly to the same effect. Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Prudential Life Ins. Co. v. Moore, 231 U. S. 560, 34 S. Ct. 191, 58 L. Ed. 367; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; New York Life Ins. Co. v. Goerlich (C. C. A. 6) 11 F.(2d) 838, March 12, 1926.

[5] Harrison's only responses to this defense are that he never had been informed of the rejection, and that he did not make the statements which the agent then acting for the Ætna wrote down. His knowledge of the rejection is not important. Even if the effect of answer 14, denying any application "concerning which I have not been notified," were to be escaped for lack of perfect correspondence to the similar question in the Ætna blank, yet, under the Dibrell Case, his answer 13, denying any previous rejection, was a representation which increased the risk of loss, and therefore equivalent to a warranty, and his good faith would not avail. Had Harrison claimed that he told the agents about the Mutual Benefit transaction, and that they had either interpreted the facts as justifying the negative answers or had deliberately inserted

---

[1] For the purposes of this opinion, we assume that there was a rejection, though Harrison claims he supposed he was passed. We do not intend to foreclose the question, for the second trial, whether there may be a jury question as to the fact of this rejection, if the present record may be sufficiently supplemented or explained by helpful further proofs.

false answers, and if the applications had been in separate papers by way of preliminary inducement to the issuing of the policies, or had it appeared (or, on the new trial, should it appear) that Harrison did not, in fact, give these negative answers in the Ætna application, we should have to consider the argument of estoppel now made for Harrison and based upon Union Mutual Life Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; but see Ætna-Moore Case, at page 559 (34 S. Ct. 186), and also the other cases cited above, and Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140, as to the present force of this estoppel rule upon a case where the application is copied into and becomes part of the policy as issued. So, also, if these agents had, in any way which turned out to be material, deceived him as to the contents of the application, we would come to the same question of estoppel. In so far as the difference in the blanks indicated that their statement that they had merely copied the answers in the Ætna application was untrue, it was in respects which we do not find to be now important.

[6] We are not satisfied that policy No. 138-515, which is an accident policy only, stands upon the same ground. The Tennessee decision in the Dibrell Case, is not necessarily applicable to an accident policy; we are cited to no decision which is directly helpful, and we find none; and we must go to the reasons for that case and for the federal cases cited to the same effect. We think the basic reasons which have led the courts to declare this materiality as a matter of law are two. The first is that the false answer conceals a door leading to a room in which the company would have searched. This reason of itself might not (though we express no opinion) be sufficient to support the conclusion; though in many cases, and perhaps in the typical or characteristic cases, the search would reveal a good original ground for rejection. The second, and, as we see it, the stronger, reason is that the general rules and motives governing all life insurance companies in rejecting life risks are so similar, if not so wholly common, that the very fact of rejection raises a substantial inference of noninsurability, or, at least, that there is a natural presumption that a company will not now insure one who has been rejected until it has satisfied itself that the rejection was not upon a ground which ought to be now controlling.

If these considerations are at the basis of the rule of the legal materiality of a previous rejection in the ordinary life case, they do not satisfactorily support the same rule when applied to an earlier application for life insurance and a later application for accident insurance. It is quite evident that the reasons for the earlier life insurance rejection might be either very persuasive or wholly unimportant to the accident insurer. The former (life) rejection might have been, for example, because applicant was a saloon keeper; and 20 years later, under changed personal and general conditions, his former occupation would have no possible pertinence to an accident risk. On the other hand, the life insurance rejection might have been because of locomotor ataxia, which disease would inevitably increase the accident risk.

So far as concerns the first reason above discussed, we cannot say that a search through the closed door would develop a situation pertinent to the later application, in instances of any such proportion, or so characteristic of the class as to justify a presumption of law that it was material to the risk to have the door opened. With reference to the second reason, similar considerations apply. We are not convinced that a rejection for life insurance, of itself, raises such an initial presumption or inference of unfitness as justifies a rule of law that it is material to the later accident risk. We think the rule must be that every case of such rejection, and later concealment thereof, must be considered on its own facts; there would be some cases like those suggested at each end of the scale, where the facts will justify only one inference and where the court may direct; there will be an intermediate body of cases, where the inference of materiality is one to be drawn by the jury; and, upon the present record, the false statement as to the Mutual Benefit rejection, made in the application for the accident policy, belongs in this intermediate body.

In determining whether the rule as to the inherent materiality of a false denial of a previous rejection must be the same as between life rejection and later accident application, as it is between life rejection and life application, it may be important to observe that accident policies come and go much more than life policies. Relatively, the latter are serious contracts, and the former casual—they are even issued for a day or a week. A man who has made a small number of life applications has very probably taken out a much greater number of accident policies. The practical difficulties of applying the rule in question to accident applications are much more than as to life applications.

The Ætna rejection, we may assume, with-

out deciding, would be material as a matter of law for the same reasons applicable to life insurance. A rejection for accident insurance seems to be, in the field of its effect upon later accident insurance, wholly analogous to a life insurance rejection as to later life insurance. However, upon this record, Harrison is entitled to go to the jury upon the issue whether there had been such a rejection. If his testimony is true, what the agents said to him was fit to induce in him the belief that the Ætna applications had never been presented to, or passed upon, by the Ætna Company, but were, in effect, abandoned in their incompleted form, and that the Columbian applications were to be substituted in the final step of procuring the policies. Under the Tennessee statute, these solicitors were the agents of the Ætna Company, as well as of the Columbian Company, and their representation that the Ætna applications were abandoned was clearly within the scope of their agency as defined by the Tennessee statute, whether they be considered as agents for soliciting, or agents instructed to reject. Notice to Harrison was contemplated by the Ætna to make the rejection complete, and the notice was deliberately not given. We think it cannot be said, as a matter of law, that these applications had been rejected; nor can it be said that Harrison had not been notified of the action taken. He had been informed, though untruly.

There was also an issue of fact as to the Maryland Casualty and General Accident cancellations. Harrison's testimony is that, after these policies were issued, he found, before the deferred premiums became due, that they were too expensive for him, and that he voluntarily instructed the agents to surrender them, and at that time paid the premiums then earned. If this is true, that transaction would not be such a cancellation as is contemplated by question 14. The context fairly indicates that the question refers, and refers only, to that kind of a cancellation which could be classified with a refusal to renew, or to that silence which would indicate the insurer's lack of satisfaction with the risk.

[7] The trial turned in large part upon a question not so far mentioned. Harrison's testimony was that these policies were delivered to him before he had signed any applications, and that he and the delivering agent were about to separate, when the agent remembered that his instructions had been to get the applications signed in connection with the delivery. Accordingly they were then and there signed by Harrison. The whole transaction apparently took but a moment. We have grave doubts whether, under the circumstances, this essentially unitary transaction could be divided into parts, so as to say that, the policies having been delivered without the applications, there was no consideration for the later application signatures; but, in any event, Harrison cannot raise that question. The policies themselves contained the application copies as part of the policies, and the application copies purported to bear his signature. He cannot bring suit upon the policies, which recite that he has made the applications, and which repeat the applications verbatim as a part of the policies, and, in the same suit, deny that he made any application whatever. Lumber Underwriters v. Rife, and other cases, supra.

It appears that shortly after the accident, and pending action thereon by the home office, Harrison sought from a money lender a loan secured by the pledge of his claims under these policies; that the person to whom this application was made inquired about the matter from Hall, the defendant's agent at Nashville, and was by him informed that he supposed the claims would be promptly paid; whereupon a loan was made to Harrison upon the faith of this security, and the pledgee appears upon the record as a party for whose benefit the suit is prosecuted. Hall had authority to issue policies; but there is nothing to show that he had any authority to make settlements or payments, or that the company is responsible for his statements in question; and there can be no presumption of the necessary authority. Upon this record there is no estoppel in favor of the pledgee.

[8] The plaintiff also recovered a penalty under the provisions of Shannon's Code, § 3369a141, which provides for such a penalty, not exceeding 25 per cent. of the loss liability, when it is made to appear that the refusal to pay the loss was not in good faith. In this connection, and as bearing on the question of good faith, there was received in evidence a letter written by plaintiff's attorneys to the defendant after suit commenced, and reciting circumstances claimed by the writers to show that the company was without justification in its refusal to pay. We find nothing in the record, even including this letter, having any tendency to show the statutory lack of good faith. The only defenses which the company made were based on the false application answers already mentioned; there is no room to doubt that these defenses were made in good faith. It is true that the correspondence between the company and its agents im-

mediately after the accident indicated the company's suspicion that the mutilation was intentionally inflicted, but the fact that it had that suspicion, uncommunicated to Harrison, and even if some innuendoes to that effect cropped out during the trial, cannot taint with bad faith the company's refusal to pay which had compelled this suit, and which refusal was based upon the substantial grounds here existing. Silliman v. Ins. Co., 135 Tenn. 646, 650, 188 S. W. 273; Continental Ins. Co. v. Smith, 3 Tenn. Civ. App. 161, 174.

The judgment must be reversed, with instructions for a new trial in accordance with this opinion.

MACK, Circuit Judge. I concur fully in the conclusions and reasoning of Judge DENISON, except only that, as in my judgment no distinction should be made between the two policies, a verdict for defendant should have been directed on each of them.