**PACIFIC MUT. LIFE INS. CO. v. MANLEY et al.**

District Court, N. D. Georgia, Atlanta Division.
August 4, 1928.

No. 424.

1. **Insurance ⬅291(1)—Representations as to previous health of insured and treatment by physicians, though relating to time several years before application, are material.**

Representations as to previous health of insured in application for life insurance are generally material, even though misrepresentation relates to time several years prior to application, and statements as to consultations with and treatments by physicians are always considered material.

2. **Insurance ⬅291(3)—Falsity of representations materially affecting risk invalidates policy, irrespective of applicant's good faith (Civ. Code Ga. 1910, §§ 2479, 2480, 2499; Acts Ga. 1912, p. 119, § 21).**

Falsity of representations which materially affect nature and character of risk defeat policy, under Civ. Code Ga. 1910, §§ 2479, 2480, 2499, and Acts Ga. 1912, p. 119, § 21, irrespective of good faith of applicant, case being similar to that of sale on representations, under section 4113.

3. **Insurance ⬅292—Denial of previous treatment by physicians held material misrepresentation, requiring cancellation of policy, where applicant had six years previously been confined and treated for recurrent severe headaches (Civ. Code Ga. 1910, §§ 2479, 2480, 2499; Acts Ga. 1912, p. 119, § 21).**

Statement in application for life insurance that applicant had not been treated by physician for ailment *held* material misrepresentation, warranting cancellation of policy, in suit by insurance company, under Civ. Code Ga. 1910, §§ 2479, 2480, 2499, and Acts Ga. 1912, p. 119, § 21, where six years prior to date of application insured had condition of acute mania, and was confined in hospitals and treated by several physicians for recurrent severe headaches.

4. **Insurance ⬅390—Six years' delay after misrepresentations concerning insured's previous health held not to bar insurer's suit for cancellation of policy, where falsity of application was not suggested.**

Suit by insurance company to cancel policy for misrepresentations by insured, commenced more than six years after misrepresentations occurred, *held* not barred by laches, where misrepresentations related to previous health of insured, and there was nothing to suggest to the insurance company that the application was false.

In Equity. Suit by the Pacific Mutual Life Insurance Company against Wesley D. Manley and another. Decree for plaintiff.

Bryan & Middlebrooks, of Atlanta, Ga., for plaintiff.

Colquitt & Conyers, of Atlanta, Ga., for defendants.

SIBLEY, District Judge. The suit seeks to cancel an insurance policy on the life of Wesley D. Manley, because of misrepresentations in the written application for it, which constitutes part of the policy. The answer seeks to uphold the policy and to collect upon it certain sums due on account of the failure of the health of the insured. The application was made April 9, 1920. Question 15 was in part: "Have you ever had, or have you now, any bodily or mental infirmity, or are you in any respect maimed or in unsound condition mentally or physically? Give particulars"—and was answered, "No." The accompanying medical examination contained question 4, in part as follows: "The applicant must answer each of these questions fully and with special care. Have you now, or have you ever had, any of the following complaints, symptoms or diseases? Headache? Neuralgia?" Answer: "No." Mental derangement or any other nervous disease not mentioned above?" Answer: "No." Question 5 was: "Have you ever consulted or been treated by a physician or other practitioner for any ailment or disease? If so, give dates and full particulars." Answer: "Only for influenza, light case, three months ago, two days' duration." Question 17 was: "Do you agree that the falsity of any answer in this application for insurance, or any answer made to the company's medical examiner in continuance of this application for insurance, shall bar the right to recover thereunder, if such answer is made with intent to deceive, or materially

affects either the acceptance of the risk or the hazard assumed by the company?" Answer: "Yes."

The agreement made in the last question is in line with the statute law of Georgia under which the contract was made. Code, §§ 2479, 2480 (made applicable to life insurance by section 2499), are:

"Every application for insurance must be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy. Any verbal or written representations of facts by the assured to induce the acceptance of the risk, if material, must be true, or the policy is void. If, however, the party has no knowledge, but states on the representation of others, bona fide, and so informs the insurer, the falsity of the information does not void the policy."

By section 21 of the Acts of 1912, p. 119, a medical examination was required in insurance such as this, and it was provided that the beneficiary might collect the insurance, "unless the applicant or beneficiary has been guilty of actual fraud or has made material misrepresentations in procuring such policy, which misrepresentations change the character and nature of the risk, as contemplated in the policy so issued by the Company." This act did not change the former law as to the effect of misrepresentations. Lee v. Metropolitan Co., 158 Ga. 517, 123 S. E. 737.

[1, 2] That representations as to the previous health of the insured are in general material, when not only life, but future health, are to be insured, requires neither argument nor authority to prove. Even though a misrepresentation relates to a time several years prior to the application, it is material, unless it is very clear that the ill health was due to a transient cause, and left no bad effects. Mental derangement, because of its obscurity, especially might well be traced back indefinitely. Statements as to consultations with and treatment by physicians are always considered material, because the means are thereby furnished for the company to check the information and good faith of the applicant as to the nature and extent of his ailments. See Metropolitan Life Insurance. Co. v. James, 37 Ga. App. 678, 141 S. E. 500; Jefferson Standard Life Ins. Co. v. Henderson, 37 Ga. App. 704, 141 S. E. 498; New York Life Insurance Co. v. Price (C. C. A.) 16 F.(2d) 660.

And it will be noted that the actual falsity of the representations, if they materially affect the nature and character of the risk, independently of intentional deceit, which also invalidates, defeats the insurance, both under the agreement in question 17, the Georgia statutes, and the decisions of the courts, supra. See, also, Prudential Insurance Co. v. Moore, 231 U. S. 560, 34 S. Ct. 191, 58 L. Ed. 367; New York Life Insurance Co. v. McCarthy (C. C. A.) 22 F.(2d) 241. Good faith is not a reply to actual falsity, unless the representation is made on information from others, and the insurer is so informed at the time. The assured proposes to contract on a basis of fact presented by him to the insurer. If that basis is incorrect in a material respect, there is no binding contract. The case is not unlike that of a sale on representations, which, if materially untrue, though made in good faith, avoid the sale. Georgia Code, § 4113.

[3] The questions in this case were untruly answered. It appears that prior to the application, in 1913, Mr. Manley, besides the attack of appendicitis which was disclosed, had an acute attack on the train of what he described as intercostal neuralgia, which took him to a hospital in Washington. Some of the evidence indicates there was perhaps mental disturbance in connection with it, but this is not clearly proven. The testimony of Dr. Bucknell discloses that he was called in the night of May 2, 1914, finding Mr. Manley in a distressing condition of acute mania. He was taken to St. Joseph's Infirmary, where he staid till May 4th, still having delusions, and with headaches, backaches, and great nervousness, as appears from the hospital records. Dr. Bucknell had him taken to New York to be examined by Dr. Jeliffe, who did not satisfy himself as to the cause of the trouble, but sent Mr. Manley off to Maine to rest, expecting to see him further, but did not. Dr. Giddings also treated Mr. Manley, apparently in 1914, after Dr. Bucknell did, when he was confined to his bed for about 10 days with severe headaches, and insomnia, being exceedingly nervous and irritable.

Mr. Manley returned to his work, but in June, 1920, five or six weeks after the application for insurance, consulted Dr. Paulin, complaining of severe headaches, constant for the preceding month, but for four or five years previous occurring only every four or five months, lasting several days each time. Dr. Paulin found his blood pressure high, about 190, and diagnosed arterio-sclerosis, treating him for that. It cannot be doubted that the denial of the consultations with and

treatment by Dr. Bucknell, Dr. Jeliffe, and Dr. Giddings, and of the confinements at the Washington Hospital, St. Joseph's Infirmary, and at home, and of the recurrent severe headaches, were material misrepresentations. Whether the insurer, if fully informed, would have considered the mental aberration in 1914 as due to some toxemia, or would have connected it with the recurrent headaches, as indicating a constitutional weakness, cannot be told.

Several of the doctors testify that this history would, in their opinion, render the risk uninsurable. Others think that the lapse of time, and the failure of the several insurance examiners to find anything wrong, would indicate the risk to be acceptable. Nevertheless the company was entitled to the facts, to pass its own judgment upon the risk. I am of opinion that full disclosure about these matters was requisite, and falsity in the answers respecting them was fatal. The mania, in 1914, for business and personal reasons, was never made public. Mr. Manley never alluded to it in any of his many insurance applications. He may have concealed it purposely, or he may, as no doubt was the case while he had it, have been ignorant or unappreciative of the nature and extent of his trouble. But he should have disclosed its occurrence and named the physicians consulted. That its cause had not been ascertained, rendered disclosure the more important.

Question 4 was not confined to diseases, but covered also "complaints and symptoms," and question 5 covered consultations for ailments, as well as for diseases. What has happened since may not be of importance, except to show what the ailments and complaints which Mr. Manley had, though they may not have been diagnosed at the time as diseases, were symptomatic of. Though Dr. Paulin's treatment in 1920 was temporarily successful, in February, 1922, Mr. Manley had a slight hemorrhage on the brain, with temporary partial paralysis. Dr. Bivings gives a picture of his resulting condition, with blood pressure 240, suffering with intense headaches, nervous and unable to sleep, speech impaired, and memory bad. Arterio-sclerosis was then well advanced. He again rallied and was able to work, but in 1926 was permanently and wholly disabled, both mentally and physically.

[4] On August, 1926, he made claim for the first time under this policy, and his sanity was inquired into in court. The above-named physicians and Mrs. Manley there testified touching this past history. Information of this testimony was conveyed to the insurance company. Its officers swear that it was their first knowledge of the misrepresentations touching the risk, and that they would not have accepted it had they known the facts. Demand to cancel the policy was made, with tender of the premiums and interest. This was more than six years after the misrepresentations occurred, yet the facts being within the peculiar knowledge of the Manleys, with nothing to suggest to the company either suspicion or other sources of knowledge, laches cannot be imputed to it. Cohron v. Woodland Hills Co., 164 Ga. 581, 139 S. E. 56. The rider made incontestable the liability only in respect to the time at which the diseases causing failure of health began. It did not cut off inquiry into the validity of the contract on account of misrepresentations.

Under the agreement made in the application, and by the laws of Georgia, there is no liability under the policy and the same should be canceled. A decree may be taken accordingly.