**INTER–SOUTHERN LIFE INS. CO. v. McELROY.**

**No. 8666.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 13, 1930.

Arthur L. Adams, of Jonesboro, Ark. (H. M. Cooley, of Jonesboro, Ark., and Robert P. Hobson, Elwood Hamilton, and Ernest Woodward, all of Louisville, Ky., on the brief), for appellant.

W. B. Scott, of Marion, Ark. (Dudley & Dudley, of Jonesboro, Ark., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

GARDNER, Circuit Judge.

This is an action on a policy of life insurance upon the life of Bert Franklin McElroy. It is alleged in the complaint that on the 2d day of April, 1928, the defendant, appellant in this court, issued and delivered to Bert Franklin McElroy a policy insuring his life in the sum of $10,000, naming the plaintiff, Don Nettie McElroy, his wife, as the beneficiary in said policy, and that on the same day the defendant company issued its supplementary contract insuring said Bert Franklin McElroy against complete disability. That the total premium on the policy and supplemental contract amounted to $123.80, for which amount the defendant issued its receipt, and delivered the same to the insured, and that the policy, with the supplementary contract, was thereupon delivered to the insured. That thereafter, and on the 8th day of April, 1928, and while the policy was in full force and effect, the insured accidentally shot himself, and on the 9th of April died from the effect of his wounds so received.

Demand for payment and refusal of said demand are alleged, and it is alleged that, in addition to the sum of $10,000, the amount named in the policy and interest thereon from May 8, 1928, the date of the refusal of the defendant to pay, she should recover an additional sum of $1,200, being 12 per cent. of the sum due under the terms of the policy as a penalty fixed by law for failure to pay loss claims under life insurance policies in the state of Arkansas, and that she should also recover reasonable attorney fees to be fixed by the court and taxed as part of the costs and penalty.

The answer specifically denies the issuance of the policy and its delivery to the insured, denies that the policy was in effect when the insured accidentally shot himself, and alleges that there was never a meeting of the minds such as to effect a valid insurance contract between the defendant and Bert Franklin McElroy; that there never was a delivery to Bert Franklin McElroy of any policy of insurance written by the defendant while said McElroy was alive and in good health; and that there never was an acceptance by McElroy of any policy as written by defendant, but that the policy sued upon came into the possession of the plaintiff after the injury to McElroy, and after his death resulting from such injury; that neither the said Bert Franklin McElroy, nor the beneficiary, or anyone else, paid the premium to defendant in cash while said Bert Franklin McElroy was alive and in good health, and that such payment was a condition precedent to any valid insurance contract, and that as soon as the defendant learned that such conditions had not been complied with it notified plaintiff that no contract of insurance had ever been effected, and that it was not liable in any amount because of any such alleged contract of insurance.

A trial of the action resulted in judgment in favor of the plaintiff in the sum of $12,610, being the face of the policy plus interest, statutory penalty, and attorney fees.

Three questions are presented on this appeal: (1) Was there a delivery of the policy to the insured and an acceptance of same by the insured? (2) Was there a payment of the premium while the insured was alive and in good health? And (3) could penalty and attorney fees properly be assessed against the defendant?

Application for a policy of life insurance was made by the deceased through the defendant's local agent, known in the record as R. T. Huxtable, who was a soliciting agent for the defendant company. It appears without dispute that the applicant intended to apply for a policy containing a double indemnity clause, but, through error in the application, such a policy was not properly described, and there issued to the insured a policy without this clause.

The application which was, by proper reference, made a part of the policy, contained a provision: "That, except as otherwise stated in the form of binding receipt.

hereto attached bearing the same number as this statement, no contract of insurance shall be deemed made, and the company shall incur no liability until a policy shall be issued and delivered to me personally and the first premium thereon actually paid during my lifetime and while I am in good health."

An agreement was entered into between the insured and the soliciting agent Huxtable by which Huxtable agreed to put the policy in effect and pay the premium for the first year, and trade it out with McElroy in oil and gas to be obtained from the filling station of McElroy in amounts not exceeding the retail cost of $20 per month. It appears from the undisputed evidence that the defendant company knew nothing of this arrangement until after the death of McElroy.

The policy itself contained the following provision: "This policy shall not take effect until it shall be personally received by the applicant and satisfactory settlement of the first premium has actually been made, all within the lifetime and during the good health of the applicant." When the policy was returned from the office of the insurance company to the soliciting agent Huxtable it was found that it did not contain the double indemnity clause which it was contemplated by the soliciting agent and McElroy it would contain. Notwithstanding this fact, however, it was taken by Huxtable to the insured at his filling station and there handed to him. Huxtable testified that he had, prior to this time, called McElroy over the telephone advising him of the error or omission in the policy, and that McElroy had in reply requested him to send the policy over to his house. This was not done by Huxtable, but on the following morning he personally handed the policy to McElroy at his filling station.

While McElroy still had possession of the policy, he received accidental injury in the nature of a gunshot wound, from which he later died. After this accident, but before McElroy's death, Huxtable went to the McElroy home and secured the policy from Mrs. McElroy. She testified that she laid it on the table for Mr. Huxtable's inspection. Be that as it may, he then took the policy and inclosed it in an envelope with a letter addressed to the general agent of the insurance company. Shortly following this transaction McElroy died, and Huxtable went to the post office and reclaimed his letter, with which he had inclosed the policy, and returned the policy to Mrs. McElroy.

At the close of the trial when these facts had been proved, the insurance company requested the court to direct a verdict in its favor, and assigns as error the refusal of that request.

It is earnestly urged on behalf of the defendant that there was never an actual delivery of the policy, but that, as delivered, it was incomplete, and that it was the intention of the parties that it should be returned for correction or amendment. Under the testimony, the details of which we need not relate, the question as to whether or not there was an actual delivery of the policy and an acceptance of it by the insured was a question of fact to be determined by the jury on proper instructions by the court, and the verdict of the jury is conclusive on this question. We must assume that the jury, under the instructions of the court, found that the policy was delivered to and accepted by the insured.

There remains to consider the further question as to whether or not there was a delivery of the policy to the insured and the first payment paid thereon during his life and while he was in good health.

The insured, in fact, paid nothing on the premium, nor did the soliciting agent pay anything under his agreement with the insured heretofore set out, until after the death of the insured. The provision in the application and policy, to the effect that the policy should not become effective until the first premium should be paid during the good health of the insured, was valid and binding as a condition precedent. Person v. Ætna Life Ins. Co. (C. C. A.) 32 F.(2d) 459, 466; Ætna Life Ins. Co. v. Johnson (C. C. A.) 13 F.(2d) 824; Mutual Reserve Fund Life Ass'n v. Farmer, 65 Ark. 581, 47 S. W. 850.

This court, in Person v. Aetna Life Ins. Co., supra, says: "From this review of the Arkansas decisions we think it is clear that in that state the validity of a condition precedent clause in an insurance policy such as we have discussed is fully recognized. In this respect the Arkansas decisions and the Federal decisions are in accord." The plaintiff contends, however, that this condition contained in the policy and application, with reference to payment of the first premium, was waived. If there was such a waiver, it must have been through the soliciting agent Huxtable. No other representative of the company knew anything of the arrangement for accepting gas for this first payment.

The application for insurance, made a part of the policy by proper reference, contains specific provision; "That only an authorized officer of the Company can make, waive, alter, or modify any provision of this application or any policy issued thereon; and no statement, promise, or information given to or by any other person whomsoever shall be binding upon the Company, so as to waive or affect any of its rights." And the policy itself contains the following provision: "Only the President, a Vice President or the Secretary has power in behalf of the Company to make or modify this or any contract of insurance or to extend the time for paying any premium, and the Company shall not be bound by any promise or representation heretofore or hereafter given by any other person. No agent is authorized to waive forfeitures, or to make, modify or discharge contracts, or to waive or make conditional the payment of any premium or part thereof." A waiver of this requirement cannot be made by a soliciting agent of the insurance company when the policy provides that no person except other designated officers of the company may alter or waive any provisions in the policy, unless the insuring company has authorized the waiver to be made. Aetna Life Ins. Co. v. Johnson (C. C. A.) 13 F.(2d) 824, 825; Equitable Life Assur. Society v. McElroy (C. C. A.) 83 F. 631; McKelvie v. Mutual Benefit Life Ins. Co. (C. C. A.) 287 F. 660; Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Prudential Life Ins. Co. v. Moore, 231 U. S. 560, 34 S. Ct. 191, 58 L. Ed. 367; Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Bradley v. N. Y. Life Ins. Co. (C. C. A.) 275 F. 657; Jenkins v. International Life Ins. Co., 149 Ark. 257, 232 S. W. 3.

This court, in Aetna Life Ins. Co. v. Johnson, supra, in discussing the contention that payment of the premium on a life insurance policy containing a condition that it should not take effect until the first premium had been paid, says: "A waiver of this requirement cannot be made by an agent of the insurance company, when the policy provides that no person except other designated officers of the insurance company may alter or waive any provision of the policy, unless the insuring company has authorized the waiver to be made."

Decisions of state courts do not control the decisions of the courts of the United States upon questions of general jurisprudence, but the decisions of the Supreme Court of Arkansas seem to be in entire accord with the decisions of this court on this question.

There was no waiver of this provision binding on the insurance company, and the policy never became effective. It was therefore error to deny the motion for a directed verdict.

The court instructed the jury to the effect that, if the jury should find "that there was a bona fide agreement in settlement for the premium on the policy, and the agent accepted that kind of a settlement with the understanding that he would transmit to the company its part of the premium and carried out that part of the agreement, that would constitute a payment of the premium according to the terms of the contract and the application upon which it was written." In view of what we have already said, it is clear that this was erroneous.

The jury returned a verdict of $10,000 with 6 per cent. interest thereon from September 3, 1928. To this verdict the judge added $1,200, being 12 per cent. penalty allowed by the Arkansas statute, and the further sum of $1,000 as attorney's fees, and it is urged that the court erred in allowing these items in addition to the verdict. The Arkansas statute provides as follows: "In all cases where loss occurs, and the fire, life, health, or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss; said attorney's fees to be taxed by the court where the same is heard on original action, by appeal or otherwise and to be taxed up as a part of the costs therein and collected as other costs are or may be by law collected." Crawford & Moses, Ark. Statute, § 6155.

The constitutionality of this statute is assailed on the ground that it is violative of the due process of law and equal protection of the law clauses of the federal Constitution (Amend. 14, § 1). Literally construed this statute seems to impose the penalty and attorney's fee "as a mere consequence of success in the suit." The Supreme Court of Arkansas, however, in Pacific Mutual Life Ins. Co. v. Carter, 92 Ark. 378, 123 S. W. 384, 388, in discussing this statute, says: "A recovery, for penalty and attorney's fee, cannot be had when complainant makes demand

for more than he is entitled to recover. It could never have been the purpose of the Legislature to make the insurance companies pay a penalty and attorney's fee for contesting a claim that they did not owe. Such an act would be unconstitutional. The companies have the right to resist the payment of a demand that they do not owe."

A somewhat similar statute in Missouri has been construed by the Supreme Court of that state as one imposing penalties for vexatious refusal to pay, and that, where the question of liability of the company presents a question of law about which lawyers may honestly entertain different opinions, the insurance company is entitled to litigate that question in the court without being penalized therefor. As so limited by construction, the Missouri statute has been sustained.

The lower court in this case, however, did not so construe this statute, and we are of the view that, unless the statute can be so construed, it is violative of the due process of law and equal protection of the law clauses of the Constitution of the United States.

As said by this court in Standard Accident Insurance Company v. Rossi, 35 F.(2d) 667, 673, in an opinion by Judge Van Valkenburgh: "In the absence of any decision of the Arkansas court of last resort to the contrary, and none has been cited, we are of the opinion that the statute in question should not be construed to demand the imposition of its penalties where the refusal to pay without suit is based upon an honest and fairly debatable difference of opinion as to the law involved; and that the application of its provisions should be confined to cases of vexatious and inexcusable neglect and failure to respond to contract obligations, as is the rule in other jurisdictions. Commercial Casualty Insurance Co. v. Fruin-Colnon Cont. Co. (C. C. A. 8) 32 F.(2d) 425, 428, 429. Furthermore, the constitutionality of a law which imposes such conditions upon the right to appeal for judicial relief as works, or tends to work, an abandonment of the right, rather than face the conditions upon which it is offered, or may be obtained, is questionable at least. Ex parte Young, 209 U. S. 123, 146, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764." See, also, Mystic Circle v. Snyder, 227 U. S. 497, 33 S. Ct. 292, 57 L. Ed. 611; M. K. & T. R. Co. v. Cade, 233 U. S. 642, 34 S. Ct. 678, 58 L. Ed. 1135; A. T. & S. F. Ry. Co. v. Vosburg, 238 U. S. 56, 35 S. Ct. 675, 59 L. Ed. 1119, L. R. A. 1915E, 953.

The facts in this case do not warrant or justify the assessment of this penalty and attorney's fees.

As the case must be reversed, it is unnecessary to notice the other errors assigned. The judgment will be reversed, with directions to grant a new trial.