## MISSOURI STATE LIFE INS. CO. v. PATER.

(Circuit Court of Appeals, Seventh Circuit. December 4, 1926.)

No. 3795.

1. Insurance ⊚⇒668(12)—Whether insured committed suicide held, under evidence, for jury.

In action on accident policy, question whether insured committed suicide *held*, under evidence, for jury.

2. Insurance ⊚⇒646(3)—Burden of proving death of insured by accidental means is on plaintiff.

In action on accident insurance policy, plaintiff has burden of proving death by accidental means.

3. Insurance ⊚⇒668(6)—Materiality of statement of applicant for accident insurance as to other insurance held, under evidence, for jury.

Whether statement of applicant for accident insurance that he had no other accident or health insurance materially affected acceptance of risk *held*, under evidence, for jury.

4. Insurance ⊚⇒668(7)—Whether statement of applicant for accident insurance concerning prior health affected risk held for jury.

Whether statement of applicant for accident insurance concerning prior health materially affected acceptance of risk *held*, under evidence, question for jury.

5. Insurance ⊚⇒668(7)—Whether applicant for accident insurance falsely represented that his habits were temperate held question for jury.

Truth or falsity of statement of applicant for accident insurance concerning his use of liquor *held*, under evidence, for jury.

In Error to the District Court of the United States for the District of Indiana.

Action by Mamie K. Pater against the Missouri State Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Claris Adams, of St. Louis, Mo., and D. H. Ortmeyer, of Evansville, Ind., for plaintiff in error.

Frank H. Hatfield and Louis L. Roberts, both of Evansville, Ind., for defendant in error.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. The judgment assailed is predicated on a contract of insurance dated March 7, 1923, providing for indemnities of $50 weekly, and $15,000 in case of death, where the injury or death results wholly from accidental means, not including "suicide, sane or insane." One of the

15 F.(2d)—47

policy conditions was that copy of the application appearing thereon, dated March 6, was made part of the contract. In the application appear these questions and answers:

"J. What accident or health insurance have you in other companies or associations? None."

"N. Are your habits temperate? Yes."

"P. Have you within the past five years had medical or surgical advice or treatment, or any departures from good health? If so, state when and what? 1921; broken ribs; complete recovery."

"S. Do you agree that the falsity of any answer in this application for a policy shall bar the right to recover thereunder, if such answer is made with intent to deceive, or materially affects either the acceptance of the risk or the hazard assumed by the company? Yes."

Insured died the following September 23 from a self-inflicted knife stab. Plaintiff in error predicates its contention of nonliability upon the claim that insured committed suicide; also that the above-quoted answers were false and intended to deceive, or materially affected the acceptance of the risk or the hazard which the company assumed.

[1] That there appears in the evidence much tending to support the conclusion of suicide must be conceded. Insured and his wife, beneficiary under the policy, were in their kitchen doing the work after the evening meal. He was wiping the dishes, and the last article wiped was a short, pointed paring knife. The wife in her testimony stated that, turning from him, she heard him say, "Here goes," and then, looking at him, she saw blood on his shirt, and him in the act of laying down the knife, and taking a few steps, falling, and dying shortly thereafter. The post mortem showed a knife wound about two inches deep, which penetrated the heart sufficiently to cause death. There was evidence tending to show that he had sustained business reverses, was drinking, and had threatened self-destruction.

On the other hand, it was testified that he was generally in excellent health and spirits; that, notwithstanding some previous business troubles, he was in fair shape, his wife and her mother having advanced considerable money to save the hardware business in which he had been long engaged, making him the manager of it; that his relations with his wife and their several young children were most happy; that he was temperate, and of a jovial, playful disposition, frequently playing games with his own and other children of the neighborhood. A number of witnesses testi-

fied to his quite frequent practice of taking a knife or other sharp instrument in his hands, and in the presence of others moving it toward his body, and just before contact turning his hand about and striking himself with his fist, exclaiming, "Here goes," or some similar exclamation, but all in play, and for the purpose of frightening those who happened to be about, calling the performance the "Dutch Act," but with nothing to indicate intent to harm himself; that such things would be done both in store and at home; and that in general he was much given to mock heroics and "play acting."

[2] We are of the opinion that upon the record the question of suicide was one of fact for the jury, whose conclusion therein we do not feel at liberty to disturb. To be sure, appellee had the burden of showing that the death was caused through accidental means; but, under the circumstances, rejecting the theory of suicide leaves no alternative but the conclusion of death through accidental means.

[3] Respecting the answer to question J, to the effect that he had no accident or health insurance in other companies or associations, it appeared in evidence that just before the date of the application he had written a letter to some other concern, calling attention to the fact that he had had a cold or an attack of flu, which had disabled him for about a week, and asking for blanks to claim indemnity therefor. The blanks were evidently furnished, and there was introduced in evidence such a blank, apparently signed by him, setting forth such illness, and saying he had been treated by a physician, but that he had recovered. There was also in evidence his receipt for $22.14, which evidently was paid him by this other concern on March 19, given to what was called Business Men's Indemnity Association, reciting a policy therein and payment "on account of disability caused by sickness on or about February 22, 1923." The statement of claim mentioned the policy as bearing date May 5, 1922. There was no other evidence as to the nature of the insuring concern or the amount or nature of the policy. It was stipulated that an action on that policy, begun by appellee, was pending; but the widow testified she did not know whether or not the policy was in force, and it does not appear whether that action is predicated on the death of the insured, or on the same or some other illness. We gather from the record that the policy was not an accident, but a health policy. It may well be that the deceased in good faith may have answered as he did, thinking that, since it was a health

policy, and the one in question an accident policy, or, as he termed it, a "life" policy, they did not in any way conflict.

But can the court say, as a matter of law, that the answer "materially affects the acceptance of the risk or the hazard assumed by the company"? Appellant contends that, the answer being untrue, the conclusion of materiality and hazard follows as a matter of law. If so, why this clause? The clause is not to be treated as though it were not present, and as if in its place were the frequently found clause, unqualified, that falsity of any answer in the application would void the policy. Courts have had frequently to deal with such clauses. It is possible to imagine circumstances under which a court might be warranted in saying that reasonable minds could not differ on the conclusion of the materiality of a concealed fact respecting other insurance. But where, as here, the prior policy was manifestly of a different class, and, under the evidence, may have been for no considerable amount, and possibly not even in force when appellant's policy issued, the question of its effect upon the acceptance of the risk or the hazard assumed by the company, as well as the good faith of the deceased in making the answer, was for the jury.

[4] And likewise as to the answer to question P, respecting his prior health, as bearing on the acceptance of the risk, or the extent of the hazard assumed by the company, and of his good faith in making the answer. Again, one can imagine a case where a court might be warranted in concluding that reasonable minds would not differ upon the inference to be drawn, had certain falsely represented facts respecting prior health been truthfully stated, as, for instance, had he deliberately concealed that he was a subject of severe and serious epileptic attacks which strongly predispose to accidents. But the situation here is so manifestly different that it was for the jury to determine whether, and to what extent, the answer complained of influenced the acceptance of the risk or hazard. Indeed, under the facts here appearing it might, with some show of reason, be said that reasonable minds would not differ on the conclusion that his week's indisposition, through what he called a cold and the flu, wherefrom he had probably recovered at the time of the application, would in any manner have influenced the company against writing the policy, or have affected the rate or the hazard. It is in this connection worthy of note that so apparently unimportant was considered the matter of applicant's physical condition that no per-

sonal examination of him appears to have been required or made prior to issuing him the policy.

[5] Respecting answer to question N, stating his habits to be temperate, whether the answer was true or false was clearly for the jury. There was evidence that liquor he had drunk was poisonous, and made him sick on several occasions; but his physician and others testified he was temperate, and it appeared that a post mortem revealed nothing which would indicate his addiction to liquor drinking.

The jury was fairly charged on all the propositions involved, and no complaint is made on that score.

The judgment must be and is affirmed.