## BUSINESS MEN'S ASSUR. CO. OF AMERICA v. CAMPBELL.*

Circuit Court of Appeals, Eighth Circuit.
May 11, 1929.

No. 8338.

Solon T. Gilmore, of Kansas City, Mo. (John Gilmore, of Kansas City, Mo., on the brief), for appellant.

Charles E. Feirich, of Carbondale, Ill. (Walter R. Mayne, of St. Louis, Mo., Ludwick Graves, of Kansas City, Mo., and Fordyce, Holliday & White, of St. Louis, Mo., on the brief), for appellee.

Before LEWIS, Circuit Judge, and WOODROUGH and McDERMOTT, District Judges.

LEWIS, Circuit Judge. Appellee, plaintiff below, was beneficiary in an accident and health policy issued by defendant on June 8, 1920, to her husband, and she recovered the amount of indemnity therein named on account of his death by accident. The proof establishes beyond question that the accidental injuries received by the insured on October 4, 1925, resulted in his death on December 13, 1925; and plaintiff's case was brought within the risk assumed by the insurer.

But the answer pleaded that the policy was at all times null and void because of a false statement made by insured in his application for the policy. The application contained twenty-eight printed questions, and above them the printed statement: "I hereby apply for insurance in the Business Men's Assurance Company of America, to be based upon the following statement of facts. The policy issued on this application is to take effect when received by me." Following each question there was a blank space in which to write the applicant's answer. Questions 23 and 28 and the answers thereto that were written in are as follows:

"23. Has any life, health or accident company ever cancelled your insurance, rejected your application or refused to renew or reinstate you? No.

"28. Have you read the foregoing answers and are they true and complete? Yes."

The applicant signed his name below the questions and answers. Defendant's agent

*Rehearing denied July 30, 1929.

solicited the application, and when it was fully made up sent it to defendant. The policy was then issued and it contains a clause which recites: "This insurance is granted in consideration of the application therefor, a copy of which is attached hereto and made a part hereof."

Defendant's answer to the complaint set out questions 23 and 28 and the answers thereto, and alleged that in issuing the policy it relied upon the facts stated in the application and believed them to be true, but that in truth and in fact the answer to question 23 was untrue, that in the year 1919 and prior to the time when insured made application for the policy sued on, he applied to the Metropolitan Life Insurance Company of New York City for a policy of life insurance and his application was in that year declined, said Metropolitan Company refusing to issue to insured its policy of life insurance, that had insurer known at the time it issued its policy herein sued on that the answer to said question 23 was false and untrue it would not have issued its policy; and that it did not know the facts in that respect until after the death of insured. The proof shows that the Metropolitan company did refuse to issue to insured a policy of life insurance in the year 1919 on the ground that its medical examination of insured disclosed he had high blood pressure. Appellee insists rejection by the Metropolitan company was not shown, but we think it clear the proof, oral and documentary, coupled with section 638, tit. 28, U. S. Code (28 USCA § 638), established the fact. A reply to defendant's answer set up estoppel, in that, defendant's agent requested insured to sign a blank application for the policy sued on, the agent saying he would fill in the answers from a prior application made by insured on which defendant had issued its policy to insured in 1918, that relying thereon insured did sign the application in blank, that the agent then filled in the answers as he found them in the prior application; and this estopped defendant to dispute their verity.

Defendant did issue a policy to insured in 1918, in the same terms as the one sued on. He wrote in the answers to the thirty questions in the application for that policy with his own hand. He permitted that policy to lapse. Defendant's agent went to insured's store on June 1, 1920, and told insured he had come there to ask him to reinstate the lapsed policy. Insured consented to do so. There is conflict between the agent and the beneficiary in their testimony as to how the application for the policy sued on was made out. Mrs.

Campbell, the beneficiary, testified her husband told the agent he was too busy at that time to attend to the matter, and the agent said if Mr. Campbell would give him the old policy, which contained the application for it, he would make out a new application, that her husband went to the safe, got the old policy with the attached papers and handed them to the agent, that at the request of the agent Mr. Campbell signed a new application, that the agent then sat down alone at a desk and filled up the new application, inserting therein the answers that had been made in the application for the prior policy. The same questions and answers are found in substance in both applications. The agent testified that he did write in all answers in the new application, but that he did so after reading each question to Mr. Campbell and that he then wrote down each answer, according to Mr. Campbell's response.

Appellant insists question 23 was a material inquiry to its determination whether it would assume the risk, and the answer thereto being in part false the policy was void. The question is manifold, and it is not denied that the answer was true in all respects but one. It is claimed that the applicant in his answer to that question should have disclosed that the Metropolitan company had rejected his application for a life policy. But that inquiry was not embodied in the question. The claim is in reality one of concealment, rather than falsification. Culling from the whole question that part of it to which appellant says an affirmative answer should have been given we have this: "Has any life company ever rejected your application?" Application for what? For a policy? Yes, impliedly. But what kind? The subject matter under consideration in the minds of both applicant and agent was an accident and health policy. The terms of the question tended to impress that thought; and several questions preceding related only to accident and health policies. We think we may assume,—at least it was not unreasonable for applicant to do so,—that some companies that issue life policies also issue accident and health policies. Nor were many other kinds of policies excluded,—fire, burglary, etc. Was the applicant bound to answer as to all of these? The question did not direct the applicant's attention to his request, if any, for insurance on his life, except as that might be included in an accident policy, as was done in Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356, and Prudential Ins. Co. v. Moore, 231 U. S. 560, 34 S. Ct. 191, 58 L. Ed. 367. On the

whole facts of the case it cannot be maintained that any one, in making up the application, was guilty of trickery or deception. There was certainly no purpose to mislead or conceal on the part of Campbell or the agent. The question was propounded by defendant, and to say the least it is ambiguous in the respect now under consideration. The answer was true if by the inquiry it was intended to ask the applicant whether his application for an accident and health policy had ever been rejected by a life company. "The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured." Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. In the absence of fraud, the applicant's failure to disclose facts about which no questions are asked will not avoid a policy. 32 C. J. p. 1272.

We do not believe the proposition that rejection of an applicant for a life policy is material as matter of law to the assumption of the risk in an accident and health policy, is sustainable. The risks are substantially different, and the facts which cause a rejection of the former may or may not increase the risk of the latter; and so it becomes a question of fact and not one of law. As said in Missouri State Life Ins. Co. v. Pater (C. C. A.) 15 F.(2d) 737, epileptic attacks strongly predispose to accidents. That fact increases the risk in both classes,—life and accident,—likewise as to many other ailments and infirmities; but many others do not. The Sixth Circuit, in Columbian Nat. Life Co. v. Harrison, 12 F.(2d) 986, was in doubt where the false answer was in an application for a life policy and the later application was for an accident policy only; but ruled it was material as matter of law where the later application was for an accident and health policy, on the ground that the two liability covenants were not separable, being purchased by an unapportionable consideration, and life risks and health risks being of like character. The two questions there propounded in a prior application for a life policy, both falsely answered in the negative, were: Had application ever been made for accident or life insurance and declined or rejected? and (second) cancelled or renewal refused or rejected? The court said:

"In the suit on the health and accident policy No. 124,331, a verdict for the defendant should have been directed on account of the Mutual Benefit rejection [for life insurance]. It seems clear that, as to the materiality of the false answer in this particular, the case upon this policy stands upon the same basis as if on a life insurance policy. The reasons which make such representations material to the risk of life insurance apply with full force to health insurance, and though this was a health and accident policy, and the recovery sought is solely under the accident provision, we see no way by which, from this point of approach, the policy may be valid for accident and invalid for health. The two liability covenants are not separable; they are purchased by one consideration; which is not in any way apportionable. Hence, if the false answer avoided the health insurance, it necessarily avoided the accident insurance."

We do not think the principle there in mind can be applied to the facts in this case, —because, here the contractual assumption of the two risks was separate and distinct, as much so as if there had been a different contract executed for each. The insuring clause in the policy in this case reads thus:

The insurer "hereby insures George A. Campbell, whose occupation is proprietor of grocery and whose beneficiary is Georgia A. Campbell (wife), against loss resulting from bodily injuries, effected directly, independently and exclusively of all other causes through accidental means (excluding suicide, voluntary or involuntary, sane or insane), and against loss resulting from sickness contracted after fifteen days from the date hereof, subject to the terms, provisions and limitations in this policy."

And the clauses fixing the indemnities are equally definite in separating the loss resulting from bodily injuries due solely to accident from loss resulting alone from sickness; thus, as to accident indemnities, Article I:

"If such injuries shall totally and continuously disable the insured from date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous total disability, and within ninety days from date of accident, shall result, directly, independently and exclusively of all other causes in any one of the losses enumerated below, the Company will pay the sum set opposite such loss which sum shall include any claim for disability.

"Loss of life,..............$5,000.00."

And as to health indemnities, Article V:

"If such sickness, directly, independently and exclusively of all other causes, continuously confines the insured within doors and totally disables him from performing any and every kind of duty pertaining to his occupation, the Company will pay him" a named amount weekly.

"If such sickness does not confine the in-

sured strictly within doors, but directly, independently and exclusively of all other causes, totally and continuously disables him from performing any and every kind of duty pertaining to his occupation, the Company will pay him" a different named amount weekly.

Other health indemnities are provided where the sickness is due to named infirmities.

Again, the distinct separation of the two assumed risks is further manifested by two clauses in Article XI, thus:

"The accident insurance under this policy does not cover any injury * * * caused or affected by disease.

"The health insurance under this policy does not cover any sickness * * * for which the insured is not treated by a legally qualified physician; nor disability for any period for which the insured has either made claim or may become entitled to indemnity from this or any other association or company, on account of injuries by accidental means."

Neither can we accept the statement that the two liability covenants "are purchased by one consideration, which is not in any way apportionable." Rather are we inclined to believe that the annual premium of $36.00 named in the policy, is but the total of two definite sums, one for each risk. Any other conclusion would challenge the soundness of the method of ascertaining the reasonable cost of the risks. The two liabilities are thus entirely different and a cause of action on one is different from a cause of action on the other. We have here a cause of action based solely on the defendant's contractual obligation to pay a named sum as indemnity for loss of life of the insured "resulting from bodily injuries, effected directly, independently and exclusively of all other causes through accidental means," and which was not "caused or affected by disease." In this case insurer proved that the insured was rejected in 1919 as an applicant for life policy by the Metropolitan company because of high blood pressure,—systolic 168, diastolic 110. But there is no proof that insured had high blood pressure six years later, at the time of his accidental injury, nor, if he had, that his condition in that respect contributed at all to the occurrence of the accident and consequent injury. The proof compels a contrary conclusion. It convinces that insured was actively and continuously engaged for several years before the accident in conducting his grocery store. He was driving an automobile on a public highway after dark on the evening of October 4, 1925. He came on to an acquaintance whose auto had gotten off the paved road and there was difficulty on account of mud in getting it back. Insured and others stopped to give help. While so engaged a stranger came along in an automobile at rapid speed, his auto struck insured about the hips while he was engaged in assisting to make a rope fast to the stalled auto, knocking him clear for about fifteen feet, causing the injuries which resulted in his death. To hold that insured's answer to question 23 was material as matter of law to the risk assumed by defendant would be a sacrifice of substance to mere form. Indeed, on the proof we think there is nothing in question 23, the answer thereto, or the claimed facts on which the Metropolitan company based its rejection, that is in anywise material to the risk assumed and here involved,—either as matter of law or matter of fact.

It may be conceded, as we think it must be, that the court erred in submitting to the jury the issue of estoppel, set up in the reply. There was nothing to sustain it. Furthermore, after the court rejected the contention that question 23 and the answer thereto were material as matter of law, there was technical error in dealing with that subject in the instructions on the basis of their effect as facts. But there was nothing in that regard, as we have attempted to show, that tended to support the defense set up in the answer, and hence no issue of fact for the jury. In other words, on the whole case the plaintiff was clearly entitled to an instructed verdict in her favor. And so we give effect to the legislative injunction found in the Act of February 26, 1919 (U. S. Code, tit. 28, § 391 [28 USCA § 391]) to "give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

Judgment affirmed.