## WHITNEY et al. v. UNION CENTRAL LIFE INS. CO.
### No. 8975.

Circuit Court of Appeals, Eighth Circuit.
Feb. 25, 1931.

Rehearing Denied April 11, 1931.

Ralph P. Wilson, of Lincoln, Neb. (Burkett, Wilson, Brown, Wilson & Van Kirk, of Lincoln, Neb., on the brief), for appellants.

Leonard A. Flansburg, of Lincoln, Neb. (R. O. Williams and George A. Lee, both of Lincoln, Neb., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge.

Parties will for convenience be designated as in the trial court, where appellants were plaintiffs, and appellee was defendant.

Plaintiffs, as beneficiaries, brought action to recover on a life insurance contract. The defense was that the insured, Bruce F. Whitney, had committed suicide within one year from the date the insurance became effective, which under the terms of the policy made it null and void. There is little dispute concerning the facts. Plaintiffs demurred to the answer, on the ground that the matters therein stated did not constitute a defense to the cause of action. The demurrer was overruled. At the close of all the evidence the court instructed a verdict for defendant and entered judgment thereon.

Plaintiffs' argument here is based almost entirely on the alleged error of the court in overruling the demurrer. It is of no consequence, however, whether we consider the case on that theory or consider the alleged error of the court in instructing a verdict, the legal question involved is the same.

The facts as stated in the answer are these: March 22, 1927, the insured, husband of Helen M. Whitney, one of the plaintiffs, signed a written application to defendant for insurance, and paid to the soliciting agent the first premium of $29.85. On March 23d the age of insured would have changed, and the agreement that premium should be paid on March 22d and quarterly thereafter was to give the insured the benefit of a lower rate. The insured died by suicide on April 10, 1928. The application in writing, signed by said Whitney on March 22, 1927, was the usual form of application used by defendant. It provided as to premiums:

"3 c. Premiums (regular $23.90 (dis. ben.) $4.35 (dbl. indem) $1.60 payable Qr. on Mch. 22."

Question 10 thereof and answer are as follows:

"10. a Has the first premium been paid?

"a Yes.

"b If so, state the amount paid, as follows:

"b I have settled the premium by payment of $29.85 for which I have received binding receipt form 401 I, to the terms of which I agree."

Provision 11 is this:

"11. It is agreed that any insurance issued on this application shall not take effect until the policy has been delivered to the applicant and the first premium due thereon has been paid and accepted by the Company or its authorized agent during the applicant's lifetime and good health; provided, however, that if the applicant pays the first premium in advance and so declares at Question 10 hereof and receives therefor binding receipt in the form attached hereto (which is the only form of receipt for payment of first premium in advance authorized by the Company) the terms of said binding receipt shall apply.

"I agree to be examined by the Company's Medical Examiner, and that my statements in

this application and to the Medical Examiner are made for the purpose of obtaining this insurance. I understand that any note accepted by the Company in connection with the first years' premium must be secured to its satisfaction. I also agree that payment of the first premium shall keep the insurance in force only to the date fixed in the policy for payment of the next premium."

The binding receipt which was given to insured at the time of the application and referred to therein is as follows:

"401 I Binding Receipt.

"Received from Bruce F. Whitney ($29.-85) Twenty-nine & 85/100 Dollars being the first premium on a policy of insurance of $5000.00 in The Union Central Life Insurance Company, of Cincinnati, upon his life, for which application is made this day. It is agreed and understood that if said application is received and is approved on the plan and for the amount applied for, by said Company at its Home Office, the said applicant will be insured from the date of such approval, subject to the terms and conditions of the policy contract of said Company; otherwise there will be no liability on the part of the Company, and the premium paid, as evidenced by this receipt, will be returned.

"Dated March 22/27.
                    "E. H. Clopper, Agent.

"This is the only form of receipt for payment of premium in advance authorized by the Company."

This application for insurance was forwarded by the agent to the home office of the company at Cincinnati, Ohio. The physical examination was approved on April 18, 1927, the application was approved on April 20, 1927, and the policy was issued on that date, and later delivered to the insured. It was accompanied by a second receipt for the premium, which is as follows:

"Union Central Life Insurance Company
            "Cincinnati, Ohio
"$29.85

"Received twenty-nine & 85/100 Dollars. —being the First premium (including premiums for disability and double indemnity benefits if any) upon Policy No. 928384, issued upon the life of Bruce F. Whitney, continuing said Policy in force to the 22nd day of June, 1927.

"This receipt is not valid unless Premium is paid, and this Receipt countersigned and dated the day of payment by M. E. Schryver,

General Agent, or such person as he authorizes by endorsement on the margin hereof.

"Paid at Morrison Ill. this 22nd day of March, 1927.
                    "E. H. Clopper, Agent,
                    "R. S. Rust, Secretary.

"Agents are not authorized to grant permits, Make or Alter Contracts or Waive Forfeitures.

"Authority is hereby given to E. H. Clopper to accept payment hereof on my account and to receipt therefor.
                    "M. E. Schryver, Gen'l. Agt."

The policy contained the following provision:

"32. Suicide. This policy shall be null and void, except for the amount of premium paid, if the insured shall die within one year by self-destruction, whether sane or insane."

The testimony at the trial differed only slightly from the statements of the answer. Mrs. Whitney testified that she was present when the written application for insurance was signed and that no receipt was given to her husband. Mr. Clopper, the agent of the insurance company, testified that he gave the binding receipt to the insured. Mrs. Whitney swore to the original petition in which it was stated that the binding receipt was issued and delivered to Mr. Whitney. Mr. Whitney acknowledges in his application that he had received it. However, the only difference it would make if there were no binding receipt given would be that the insurance would not take effect until the policy was delivered and the first premium due paid and accepted by the company, as provided in the application, while if the binding receipt were given the insurance would take effect upon approval of the application by the company at its home office. There can be no doubt under the evidence that the binding receipt was given as claimed by defendant. Under the suicide clause if Whitney died within one year from the time the insurance became effective there could be no recovery. Both parties are agreed on this proposition.

Defendant made a tender to plaintiffs of the amount of premiums the insured had paid. Defendant's theory is that the answer and the evidence as well show the death of insured by suicide within one year from the effective date of the insurance, i. e., April 20, 1927, when the application was approved at its home office. Plaintiffs' theory is that the insurance became effective on March 22, 1927, when the application was signed and

the first premium paid, which would be more than a year before the suicide of Whitney. Plaintiffs' argument stresses the proposition that, if by reason of the various writings, receipts, and application an ambiguity as to the effective date of the policy arises, such question should be construed against the insurer. Of course this is the law. Business Men's Assur. Co. of America v. Campbell (C. C. A.) 32 F.(2d) 995; Banker's Reserve Life Co. v. Matthews (C. C. A.) 39 F.(2d) 528; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102.

■ It is also the law that the courts will not make new contracts for the parties, but will seek to interpret the contracts made according to the intention of the parties as gathered therefrom. An insurance contract is no different from any other contract. This court in considering such contract said in Hawkeye Commerical Men's Ass'n v. Christy, 294 F. 208, 213: "The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover."

Plaintiffs contend that the intent of the company to treat the insurance as commencing March 22, 1927, clearly appears by virtue of the quarterly premium dates fixed by the policy as commencing upon that date, the reference therein to anniversary dates, the subsequent receipts for quarterly payments, and the receipt for the first premium, heretofore set out, which they designate as plaintiffs' binding receipt to distinguish it from defendant's binding receipt.

It is true the company by the terms of the policy fixed March 22d as the policy anniversary date. The written policy also contains certain provisions with reference to the amount insured up to the age of sixty-five, which refer to the policy anniversary nearest to age sixty-five of the insured, namely, March 22, 1961. As to the amount of insurance after the age of sixty-five, reference is also made to the policy anniversary nearest to age sixty-five, and there is a provision for conversion prior to March 22, 1956.

Plaintiffs argue that its alleged binding receipt, stating that the payment of March 22d continued "said Policy in force to the 22nd day of June 1927," fixes with certainty the date to which the first quarterly premium carried the policy, and that therefore as a matter of necessity it fixed the commencement date of the insurance contract as of March 22, 1927; that the application in providing for payment quarterly beginning with March 22d moved the insurance protection back to said date.

■ That the effective date of an insurance contract may be antedated to cover the period during which no risk is assumed by the insurer is without question. There is no reason why parties cannot agree that a policy may be antedated, and that the policy shall take effect from said date agreed upon, for a policy of insurance is a voluntary contract. Nearly any kind of an agreement that is not contrary to law or public policy may be included therein. An insurer may impose such conditions as it desires and the insured can take them or go without the policy, as it may choose. Plaintiffs' counsel in their argument make this suggestion:

"Suppose, in the case at bar, the company had specifically provided in the policy itself that its effective date was March 22, 1927, and that it was effective from that date. In that event we do not think that defendant itself would have had the temerity to contend that merely because there was no risk for a period after March 22, 1927, that therefore the contract would not become effective on that date. We assume that if such a provision had been expressly incorporated in the policy it would have been held conclusive evidence of the company's election to disregard any conflicting provisions in the application or defendant's binding receipt."

■ Of course, if the company had specifically provided in the policy that the effective date of the insurance was to be March 22, 1927, that would be the end of the case. The theory of plaintiffs is ingenious, but in view of the written application, the binding receipt, and the policy itself, we are, as was the trial court, unable to accept the theory that by plaintiffs' alleged binding receipt and the date of payment of first premium as fixed by the application and the policy, the insurance was automatically moved back to March 22, 1927, as the beginning of the year under the suicide provisions of the policy. We think the contract for insurance is perfectly clear and that it is not at all ambiguous. The giving of two receipts for the first premium was an apparently useless performance and is the cause of this lawsuit. It gives opportunity to argue that the contract of insurance is ambiguous. The insured signed the application, reciting he had received the binding receipt, the very application in which the time for

payment of quarterly premium is designated as March 22d, and in that it was agreed that the insurance issued on the application should not be effective until the policy was delivered to the applicant with the provision that if applicant pays first premium in advance and receives binding receipt its terms shall apply. There was a further agreement as to examination by the company's medical examiner, all of which seems clear enough.

There is no provision in the application or in the binding receipt or the policy that the insurance shall take effect on March 22d. The purpose of inserting March 22d is made clear in the record, which was that it would give a lesser premium rate to insured, as his age would change within the next two days. There is no question as to the date of approval at the home office, which was April 20, 1927. The approval of the medical examination did not occur until April 18, 1927. The insured committed suicide on April 10, 1928. If plaintiffs' theory is correct that the receipt for the premium, and other matters relied on, automatically moved back the insurance so as to make it effective March 22d, then there could have been recovery under the policy if the insured had died before his medical examination was approved or before the issuance of the policy. This would be a most unnatural and strained construction of the insurance contract.

The application for insurance was a mere proposal to the insurance company. It was under no obligation to approve it. It could accept it and have a policy issued or it could have refused so to do. There was no contract until the application was accepted. If insured had died after March 22d and before the application had been approved, is there any question that defendant could have refused to approve the application?

The term policy anniversary evidently refers to the date of the payment of the first quarterly premium. Under the terms of the policy certain privileges and benefits are provided with reference to the policy anniversary. These benefits are based upon the premiums paid. The surrender values and loan values depend upon the anniversary year of the policy. We think these provisions relate entirely to settlements and amounts to be paid, and have nothing to do with the time when the insurance contract goes into effect. It is evident that plaintiffs' so-called binding receipt was not issued before the policy, as it refers to the number thereof. The policy was not in existence on March 22d. The trial court in its opinion said on this subject: "So

it seems to me that the testimony is entirely consistent and undisputed in substance that this receipt, that the plaintiffs relied upon must have been issued at the time of the delivery of the policy." With this we agree. It purports to be a receipt for the first premium upon policy No. 928,384, issued upon the life of Whitney, and it recites that it continues such policy in force to the 22d day of June, 1927. It is not a contract of insurance. The payment of the first premium on March 22d benefited insured as to the amount of the premium and also in future settlements under the terms of the policy. This receipt did nothing more than was accomplished by the policy. The application and binding receipt covered the same question and the application provided the insurance should not take effect until the policy was delivered. The words of the receipt did not vary the application. The policy was continued to June 22, 1927, whether or not this receipt was given. It seems to have been a superfluity.

It is not at all out of reason that, in view of the lesser premium that insured was called upon to pay by reason of fixing the date of the first quarterly payment as March 22d, he should accept a shorter term than the usual three months as a quid pro quo for the first payment. It was a matter of mutual benefit. The minds of the parties met on the proposition that the first quarterly payment was to be as of March 22d, and that the insurance was not to take effect until the policy was approved by the company at its home office. Plaintiffs intimate that there was a waiver of this binding receipt. We see nothing whatever upon which to base such claim.

Plaintiffs cite many cases in their extended brief. We have examined them but see no necessity of reviewing them all. None of them have the same state of facts as exist here and some seem to us as authorities against plaintiffs' contention. We refer to a few.

Schwartz v. Northern Life Ins. Co. (C. C. A.) 25 F.(2d) 555, 558, would seem to be an authority for defendant instead of the plaintiffs, for the court there holds that the date from which a policy of insurance becomes effective is the date from which the risk commences, determined by the meaning of the provisions of the contract; that it is not necessarily determined by the date when the first premium is paid, or the date the policy bears, or the date of delivery; that when a company approves the application and the binding slip which provides that, subject to approval and acceptance, insurance shall be effective from a specified date, it becomes operative from

such date. It holds that if there is an agreement that a life insurance policy shall relate back and take effect from the date of the application that such agreement is binding. In other words, that the court must take the facts and get at the intent of the parties. The insured in that case committed suicide. The binding receipt provided the insurance should take effect from the date of the approval of the medical examination, and the court holds that the date when the policy became effective was the date when the risk commenced. The court, referring to the binding receipt, says: "When it provides by its terms that, subject to approval and acceptance, the insurance shall be effective from the specified date and the company accepts the application or approves the risk, it becomes operative from the date specified. * * * It is well settled that effect will be given to an agreement that the policy shall be dated as of the date of the application, and shall relate back to and take effect from that date." There was no such agreement here. The policy was not dated as of the date of the application.

Johnson v. Mutual Benefit Life Ins. Co. (C. C. A.) 143 F. 950, 953, is referred to by plaintiffs, and much reliance placed thereon. We are unable to see that the Johnson Case is in any way enlightening as to this case. The facts are not similar. It does refer, however, to the method of conducting the business of insurance companies in regard to stating the age of the applicant as being that at his nearest birthday, and says: "That as the insured desired to obtain a lower premium rate, which was to endure during the life of the policy, he was willing to allow his first premium payment to cover a short period anterior to the date of his policy so that he might be accepted as of the age of 44." Such practice seems to be common in insurance contracts.

Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102, also cited, discusses the meaning of the term "from its date of issue" as occurring in a life insurance policy that was incontestable except for non-payment of premiums provided two years had elapsed from its date of issue. It was held that the date was the one specified in the policy, although this was by agreement of the parties earlier than the date of actual execution and delivery.

In Beswick v. National Casualty Co., 206 Mo. App. 67, 226 S. W. 1031, 1032, the court refers to an application for life insurance as a mere proposal on the part of applicant and that there is no contract until the proposal is accepted, but there is some comfort for plaintiffs' theory here in these words of the court: "Here the agent, according to defendant's testimony, had authority to fill out and deliver a receipt, the blank for which was prepared by the insurance company for such use, and the blank as thus prepared shows that, by filling it out, the agent could specify the date to which the policy could be carried, which necessarily would fix the date when such insurance should begin."

The facts of the cases cited are so different from those in the case we are considering that they furnish little support for plaintiffs' theory.

A rather recent case, not cited in the briefs, bearing on the general subject, is Harvey v. Union Central Life Ins. Co. (C. C. A.) 45 F.(2d) 78, 82. The question of the purchase of extended term insurance by the reserve was involved. It was the contention of appellant that the effective date of the policy was November 7th and that the extended term insurance purchased ran for 237 days from that date, carrying insurance beyond the date of the death of the deceased. It was the contention of the appellee that the extended term insurance ran from October 22d, on the theory that premiums were payable annually in advance on the 22d day of October. The court refers to the numerous cases holding that by agreement a policy may become effective and the policy year begin at a date prior to the approval of the application, and uses this language: "A review of the numerous authorities cited in appellee's brief will disclose no case, nor do we think any can be found, of persuasive force, in which the mere provision for payment of premiums in advance was construed to overcome the plain provisions of a policy that it should take effect on a subsequent date."

In Mutual Life Ins. Co. v. Barrett, 215 Ala. 142, 110 So. 275, 276, the court said: "And in the present case, insured having applied for a policy on September 4, 1924, it would be a matter of great difficulty to state a plausible reason for holding that he was insured from May 18, 1924, and a matter of difficulty also to hold that the stipulated period of defendant's exemption from liability on account of suicide began before its liability as an insurer."

We can reach no other conclusion than that the insurance became effective when the application was approved at the home office, viz., April 20, 1927, and that the year under the suicide clause commenced to run from that date. As insured died from suicide on

April 10, 1928, which was within a year from the date the insurance became effective, there can be no recovery under the policy. As the effective date of the insurance is not in our judgment in any way uncertain and the written contract is not ambiguous, the offer of plaintiffs to show an oral agreement between insured and a soliciting agent of defendant was properly denied.

The rule is stated in 14 R. C. L. p. 880, as follows: "The authorities are agreed that in the absence of a statute to the contrary, of which there are examples, an oral contract of insurance which contains all of the elements essential to a contract is valid. * * * Where, however, a written contract of insurance has been entered into in pursuance of a previous application, parol proof of an antecedent oral agreement is inadmissible."

The trial court was right, and the judgment is affirmed.