## SOLEZ v. ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., LIMITED, OF ZURICH, SWITZERLAND.

### No. 71.

Circuit Court of Appeals, Second Circuit.

Dec. 14, 1931.

Manton, Circuit Judge, dissenting.

Alfred W. Andrews, of New York City (Fred H. Rees, Rollin E. Talbert, Chester Barrett, William Shumate, and Stewart Warner, all of New York City, of counsel), for appellant.

Coudert Brothers, of New York City (Frederic R. Coudert, Jr., and P. A. Shay, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

Solez, the deceased, whom it will be convenient to speak of as the plaintiff, took out a policy of accident insurance with the defendant on May 21, 1927. On October 25, 1929, while the policy was in force under extensions, he fell out of a window and was killed; his widow, the beneficiary in case of his death, sued upon the policy, and the defendant answered that it had been procured by misrepresentations made with intent to deceive, which were material to the defendant's acceptance of the risk and to the hazard assumed. The proof was that the application contained this question: "Has any accident, health or life company or association ever rejected your application, cancelled your policy or certificate or declined to renew the same? (If so, state name of every such company and reason for such action)." To this the plaintiff answered "No." He had made five applications for life and health and accident policies, only one of which ever had been written. The circumstances in each case were as follows: On June 8, 1922, he applied to the Mutual Life Insurance Company for a $2,000 twenty-payment life policy. He was then rejected because he was overweight and had once shown traces of sugar in his urine. Of this rejection he had learned from the company's solicitor who had dealt with him, as conclusively appeared from his application to another company in the following May, in which he declared that he had been formerly examined in "May, 1923," and "rejected" by the "Mutual Life." (The examination and rejection had in fact been in June, 1922, as we have said.) The Mutual

Life Company would always have entertained a later application if he were at that time a better risk; and he did make such an application on May 21, 1924, for an ordinary life policy of $2,000, with a yearly renewal term policy of $10,000. This was the cheapest form issued, and was refused, but the company wrote for him on that application a "modified" life policy for $12,000, after a physical examination which he successfully passed.

Meanwhile he had in May, 1923, applied to another company, the Security Mutual Life, for a twenty-payment life policy of $5,000; it was in the application for this that he declared he had been rejected by the Mutual Life in 1922—mistakenly stated as 1923. This was rejected, but there is some question whether the plaintiff ever learned of it. The company's home office sent the letter to its general agent, but the solicitor, who was in the agent's employ, could not recall that he had relayed the information to the plaintiff.

On January 4, 1924, he applied for a noncancellable health and accident policy to the Metropolitan Life Insurance Company. The application as filed was rejected, but the company offered him on the same application a cancellable health and accident policy, subject to physical examination. He failed to take the examination, the application lapsed, and he received back the fee of five dollars which he had paid. Again in March, 1924, he filed another application for a health and accident policy with the same company which was rejected because at that time he had already indemnity policies of two hundred dollars a week, and under the rules of the insurer, the limit was $150. The two first rejections and the two modified offers were because of the plaintiff's physical condition.

The defendant offered proof by underwriters that the falsity of the answer to the question quoted above was both material to the acceptance of the risk and to the hazard assumed. It is not necessary, in the view we take, to state the substance of this evidence, or say more than that we accept the rule in Penn Mutual Life Ins. Co. v. Mechanics' S. B. & T. Co., 72 F. 413, 38 L. R. A. 33 (C. C. A. 6), that such testimony should be confined to underwriters' usages, and should not cover what the insurer would have done in the given instance. That case contains a full discussion of the conflicting decisions on this vexed question; we need not review them. The court adopted an objective standard, consonant with general notions of contract. The legal consequences of a breach of contract usually depend upon how ordinary people would act in the obligee's position, not on how he would have acted himself.

The judge in general terms left it to the jury to say whether the plaintiff had intended to deceive the defendant by the answer to the question quoted, and whether the truth if given would have been material to the acceptance of the risk and the hazard assumed. Later, at the plaintiff's request he charged them that if they found that any of the clauses in the policy were ambiguous, they might give them the interpretation most favorable to the assured. Later still, more specifically and at the defendant's request, that if the plaintiff knew of the rejection of the Mutual Company, his answer was made with intent to deceive. They returned a verdict for the full face of the policy and the judge directed judgment upon it. The defendant appealed, insisting chiefly that a verdict should have been directed.

■ Four of the applications can be easily disposed of. Of that to the Security Mutual Company the plaintiff may never have learned. The fact that he had made an application, and had got no answer, was indeed an indication that it had not been successful, from which a jury might have inferred that he must have understood it to be rejected, but the defendant had the burden on that issue, and obviously the issue called for a verdict. True, if the answer was material to the risk or its acceptance, the plaintiff's knowledge was immaterial, but we shall show that this too was an issue for the jury. The second application to the Mutual Life Company, and the first to the Metropolitan were not rejections at all. In each case the plaintiff asked for one form of policy and was offered another, though less favorable. In the second, the offer was of the "standard" health and accident policy, and the underwriter himself said that it was not a rejection. If the word, "rejection," can be made to cover such situations at all, it is only with much doubt, and under the familiar rule the insured may construe it in his own favor. The last application to the Metropolitan Life Company was indeed rejected, but the plaintiff learned of the reason, which had nothing to do with his desirability as a risk. He could not have supposed that the question included such a transaction, and in fact it did not concern the risk at all.

■ There remains only the first application to the Mutual Life Company, which was for

a life policy and was rejected outright. We can see nothing in the fact that a later application would have been, and was, entertained. That is probably true in most cases; at any rate the rejection of that application was definitive, and the answer was untrue, unless the question did not cover applications for life policies. The argument, which prevailed in Business Men's Assur. Co. of America v. Campbell, 32 F.(2d) 995, 996 (C. C. A. 8), is that the words, "your application," meant "your application for accident insurance," and we may also assume "for accident and health insurance"; more strictly, that they are open to that interpretation, and should for that reason be taken contra proferentem. Life companies, this argument runs, also write accident insurance, as the plaintiff himself knew, because he had applied for health and accident insurance to the Metropolitan Life Company. The phrase, "accident, health or life company or association," indicated, or at least may have indicated, only the kind of company which should reject an accident application. No layman can be expected to suppose that the rejection of an application for life insurance is material to an accident policy.

We cannot agree. If the only purpose was to find out whether accident applications had been rejected, nothing was easier than to ask whether any insurance company had rejected such an application; there was no reason to mention the three kinds of companies. "Your application" to a "life company," normally means any application made to such a company, whatever the insurance asked. To suggest that it covers only one kind of policy written by such companies, and that too one which 'they are not primarily organized to issue, seems to us far-fetched and perverse. Moreover, if the words are to be referred to the kind of company and not to the risk, "health" is a singularly inept word to include. "Accident companies" there are, and "life companies," but "health company" is at least an uncommon way to speak of any kind of insurance company, even of those who have the word in their title. The phrase as a whole appears to us to be reasonably clear, and the judge should have charged the jury that the question covered applications for life insurance. His error in letting the jury construe the document for themselves became critical when he added that if the plaintiff knew that the Mutual Life application had been rejected, he intended to deceive the defendant. This left it possible for them to find a verdict for him only by assuming that the question did not cover life applications; that is, that although he had intended to deceive, it had been in a matter as to which he had not been questioned. If the jury had not this escape, the instruction was inconsistent with any action but a dismissal. In any view the case ended there, because the materiality of the answer to the risk is of no moment, if the applicant means to deceive. This has been held as to section 58 of the New York Insurance Law (Consol. Laws, c. 28), and the decisions are applicable to section 107 (f) as well. Eastern Dist. Piece Dye Works v. Travelers' Ins. Co., 234 N. Y. 441, 449, 138 N. E. 401, 26 A. L. R. 1505; Minsker v. John Hancock, etc., Co., 254 N. Y. 333, 173 N. E. 4. The judgment cannot therefore stand.

It does not follow that a verdict should have been directed for the defendant. The plaintiff's knowledge that the Mutual Life Company had rejected his application was not conclusive evidence that he meant to deceive. If we had no more than the rejection itself, this would be true; but, as we have said, in 1924, the Mutual Life Company itself gave him a policy for $12,000. That might have persuaded him that for purposes of other applications the rejection had been cancelled; that it counted no more than if he had had but one application, on which after an initial rejection he eventually succeeded. It is true that the plaintiff was a lawyer and presumably nicer than others in dealing with words; that is a circumstance which counts strongly against any such naïve understanding; in a case where the jury really weighed the evidence, it would probably be conclusive. But we can scarcely make a different rule for insurance actions because we know that defendants cannot have a fair trial. We think it possible for reasonable men to say that even a lawyer might suppose his subsequent acceptance by the same company washed out the original rejection; that is, that it was not the kind of thing inquired about. Were we merely construing the contract, no such private understanding would count, but the statute makes it crucial, unless the answer be material to the risk.

█ We cannot say that it was material, that is, so plainly material as to justify a direction. It is probably true, though we need not so decide, that when applications are of the same kind, as both for life insurance, or both for accident, courts treat suppression by the insured of an earlier rejection as necessarily material to the risk and as ipso facto avoiding the policy. Ætna Life Ins. Co. v.

Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Prudential Ins. Co. v. Moore, 231 U. S. 560, 34 S. Ct. 191, 58 L. Ed. 367; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; New York Life Ins. Co. v. Goerlich, 11 F.(2d) 838 (C. C. A. 6). Apparently the law of New York is the same. Tilbrook v. U. S. Casualty Co., 254 N. Y. 619, 173 N. E. 892. The earlier case of Penn Mut. Life Ins. Co. v. Mechanics' S. B. & T. Co., 72 F. 413, 430–432, 38 L. R. A. 33 (C. C. A. 6), is not in accord unless there be a difference between suppressing rejected applications and falsely stating the amount of other insurance carried. The question is here, however, whether the suppression of a rejected life application has the same effect in the case of accident insurance. Columbian, etc., Co. v. Harrison, 12 F.(2d) 986 (C. C. A. 6), Missouri, etc., Co. v. Pater, 15 F.(2d) 737 (C. C. A. 7), and Business Men's Assur. Co. of America v. Campbell, 32 F.(2d) 995 (C. C. A. 8), decided that it has not, and that the materiality of prior rejections was for the jury. The Court of Appeals of New York has not passed upon the matter beyond saying that in general the materiality of the misrepresentation is a question of fact (Sebring v. Fidelity-Phenix Co., 255 N. Y. 382, 385, 174 N. E. 761); and such is the usual rule (Penn Mut. Life Ins. Co. v. Mechanics' S. B. & T. Co. [C. C. A.] 72 F. 413, 430–432, 38 L. R. A. 33). The law in the case of similar insurances, if otherwise, is therefore an exception; and in any case the connection is certainly not so clear when the insurances are of different kinds. There must be many cases where prior rejections of applications for other kinds of insurance would not inevitably increase the hazard, or cause a rejection of the risk, though they are always material in the sense that the underwriter considers them. In the case at bar, for example, it is very hard to suppose that the facts which would have been brought out by a disclosure of the Mutual Life or Security Mutual rejections would certainly have led to a rejection of the policy in suit, or to a counter offer of a less favorable policy. Perhaps they would; but if the defendant is to escape a jury, we must be more certain. A strong enough case might be made by disinterested underwriters all testifying without contradiction to a uniform usage in such cases; but we cannot say so a priori; ordinarily the jury must decide. Therefore, it may prove serviceable to define at this time the form of the issues to be left to them. While Sebring v. Fidelity-Phenix Fire Ins.

Co., 255 N. Y. 382, 174 N. E. 761, 762, did not arise under the statute, it was close enough kin to make it a precedent. Upon the issue of the acceptance of the risk we take as a test the language found there: "If the underwriter, with full information would have refused to accept the risk, then the concealment is material. The undisclosed fact need not be of such a nature as to have increased the risk or contributed to any loss or damage." On the other issue—the hazard assumed—the test is whether the facts if known would have resulted in a demand for a higher premium or in the offer of a less favorable form of policy, its modern equivalent. Penn, etc., Co. v. Mechanics', etc., Co., supra (C. C. A.) 72 F. 413, 430, 38 L. R. A. 33.

The defendant also maintained the right to abate the recovery; this because of an answer to another question not hitherto mentioned. This required the plaintiff to state what other accident or health insurance he carried. His answer was truthful except that he mistakenly reported a health and accident policy of $10,000 carried by the Commercial Travellers' Insurance Association, as a policy of the same value carried by the "Commercial Cas. Co." The defendant argues that this gave it the right to abate one-sixth of the recovery under section 107 (f) of the New York Insurance Law. The mistake could not, however, have been made with intent to deceive; nor could it have been material to the acceptance of the risk or the hazard assumed. It should be disregarded upon the new trial.

Judgment reversed and new trial ordered.

MANTON, Circuit Judge.

I dissent. The prevailing view of this case rests upon the apparent desire to substitute the opinion of judges for the opinion of a jury on clear issues of fact which this record discloses. It is the first application for insurance, made to the Mutual Life Insurance Company for a life policy, it is said in the prevailing opinion, that was rejected.

When this application was made, the examining physician of the Mutual Life Insurance Company testified that on June 8, 1922, Solez applied to that company for a $2,000 life policy. His examination revealed that he was overweight, with a trace of sugar in his urine. When another physician of the same company examined the applicant, four days later, there was no trace of sugar. The applicant was not rejected, but was advised to postpone his application for six months,

with the idea that he might reduce his weight in the meantime. His application was thus declined without prejudice to a subsequent application, and on June 20, 1924, he applied for life insurance with the same company. The second physician of the Mutual Company who examined him testified that on the basis of his physical examination later made he would have recommended the acceptance of the applicant, as he had passed a favorable physical examination. The company gave him a life insurance policy for $12,000, called a "modified life," because of the action which had taken place respecting his 1922 application. By this action the company considered Solez an ordinary risk for life insurance, but not such as would entitle him to get the particular kind of preferred insurance that he had previously applied for. Under these circumstances, it was very reasonable for Solez, or indeed any other person, to suppose that subsequent acceptance had the effect of wiping out the action of the company with respect to the 1922 application and that he was an acceptable risk and had never in fact been rejected by a life insurance company. The other applications referred to in the prevailing opinion are not deemed to have been rejections.

Question 7 of the accident policy application, which it is claimed was falsely answered, was modified or limited by question 17, which was: "Do you understand and agree that the falsity of any statement in this application shall bar the right to recover if such false statement is made with intent to deceive, or materially affects either the acceptance of the risk or the hazard assumed by the company and that any statement made to the agent or solicitor not written hereon shall not be binding upon the company?" To this he answered "Yes." Whether question 7 was falsely answered necessarily, in view of question 17, involved the question of intent to deceive. It was a question of fact, submitted to the jury, in a charge to which no exception may be taken. The court charged the jury, among other things: "If you find from an examination of the policy that any of the clauses are ambiguous, you are entitled to give those clauses an interpretation most favorable to the insured." The authorities are ample in support of this. See Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; McMaster v. N. Y. Life Ins. Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408;

Business Men's Assurance Co. v. Campbell, 32 F.(2d) 995 (C. C. A. 8), certiorari denied 280 U. S. 594, 50 S. Ct. 40, 74 L. Ed. 642. Moreover, the court charged that, if the plaintiff knew that the Mutual Life application had been rejected, he intended to deceive the defendant. This was more favorable than defendant was entitled to have. The jury, however, necessarily found that he did not know his application had been rejected. The answer to question 7 was not false as a matter of law, and the jury has resolved the claim of a rejection against the defendant.

The judgment should be affirmed.