Ruth G. Renn JUDE, Plaintiff-Appellee,

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.**

No. 18324.

United States Court of Appeals Sixth Circuit.

March 6, 1969.

John H. Marble, Cincinnati, Ohio, for appellant; Marble & Vordenberg, Cincinnati, Ohio, on brief.

Walter Bortz, Cincinnati, Ohio, for appellee; Kenneth B. Ater, Chesapeake, Ohio, Hoover, Beall & Eichel, Cincinnati, Ohio, on brief.

Before PHILLIPS, PECK and Mc-CREE, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action by a widow to collect life insurance under a family policy issued upon the life of her husband, Earl A. Renn. The jury returned a verdict in

favor of the widow and District Judge David S. Porter entered judgment accordingly. He also entered judgment for $1,270 paid-up life insurance on the life of the widow and for paid-up term insurance of $1,000 upon the daughter of the insured until she attains the age of twenty-five.

The insurance company appeals, contending that the policy is void because the application contained false answers and failed to disclose that the insured was an habitual alcoholic and had been treated for alcoholism. We affirm the District Court.

The original action was filed in the Court of Common Pleas for Lawrence County, Ohio, and was removed to the District Court by the insurance company upon the basis of diversity of citizenship. Ohio law controls.

Decision of the case requires construction of Ohio Revised Code § 3911.06, which is as follows:

"No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer."

The District Judge charged the jury that there is no question that the insured was an alcoholic and had a past history of alcoholism and that the answers to his questions on the insurance application relating to alcoholism were false. He further instructed the jury that the false answers were material and were relied upon by the company and that if Prudential had known they were false it would not have issued the policy. Submitted to the jury were the issues of whether these false answers were made willfully and whether the insurance company had proved clearly that its agent had no knowledge of the falsity or fraud of such answers.

After the return of the jury verdict the District Judge rendered a well-reasoned memorandum opinion denying the motion to set aside the verdict and to enter judgment for the insurance company notwithstanding the verdict. He also overruled a motion for a new trial.

The insured worked as a pipe inspector for a steel company in Youngstown, Ohio. Before the issuance of the insurance policy involved in this action, the insured had a small insurance policy issued by Prudential upon the life of his daughter. The premiums on the daughter's policy were collected by an agent, who lived in the same neighborhood as the insured and collected premiums on his debit from other families insured by Prudential. In collecting premiums the agent called in person at the homes of the insureds. In addition to the insured in the present case the agent collected premiums from Ted Schilling, next door neighbor and personal friend of the insured.

During the period of almost three years before he solicited the policy here involved, the agent had called at the Renn home about nineteen times according to the agent's calculation and about twice that often according to the testimony of the widow. He knew Mr. and Mrs. Renn on a first name basis. His collection calls were made on Monday mornings. When both Mr. and Mrs. Renn were at home he often visited with them from thirty to forty minutes and sometimes drank coffee with them. There is abundant proof that during the period that the agent was making these calls the insured was having acute problems with alcoholism. There is testimony that he drank from a pint to a fifth a day. The widow testified that on many occasions when the agent came to their home the insured's speech was slurred, his eyes were red and puffy and his complexion was blotchy and that on some mornings when the agent called her husband was "high,

tipsy, under the influence, and sometimes quite drunk."

Mr. Schilling, the next door neighbor, testified concerning an occasion when he and Renn were sitting in a swing on Renn's front porch at the time the agent called to collect the premium; that Renn had a half a glass of whiskey in his hand and a half-filled bottle sitting on the windowsill next to the swing; that Renn offered a drink to the agent, who declined; that Renn staggered from the swing, knocked over a stand and ashtray, "got mad," called to Mrs. Renn to get the checkbook and "used language that I can't use here." The wife made out the check for the premium and Renn signed it.

Schilling testifed that on one morning when the agent called at Renn's house and then came to Schilling's house to collect a premium, the agent remarked that "Boy, he's in bad shape this morning." Schilling further testified that during this period "any time you talked to this man, whether at breakfast, dinner or supper, he smelled like pure alcohol;" that "the Renn house smelled like a bar;" and that Renn's garbage can, which was visible to the agent when he walked from the Renn house to the Schilling house, often was overflowing with empty whiskey bottles.

The widow testified that the agent on one occasion told her that he had followed Renn while driving an automobile; that Renn was "all over the road;" that he "must have been loaded," and warned that "he could really cause a bad accident."

We agree with the District Judge that the jury could conclude from the testimony that this type of insurance agent gets to know his customers fairly well in the neighborhoods where he works, and that before the issuance of the policy involved on this appeal the agent personally was aware of Renn's problems of excessive consumption of alcoholic beverages.

In 1962 Mr. and Mrs. Renn purchased a house on another street in Youngs-town. The agent came to the new home and solicited a larger insurance policy instead of the small policy on the life of the daughter. The widow described this incident as follows:

"A Mr. Sawyer came out to the house and knocked on the door. He looked at the house, admired it, sat down and began to talk. He advised us possibly it would be a good idea to take out a policy on the house, and Earl told him that there had been several mortgage—several companies that had unsolicited contacted us to take out a mortgage policy but they were all too expensive.

"So he suggested this family plan, and he told me it would give me some protection and Nancy the same and protection on his life in case anything would happen. Earl could cash in Nancy's policy and also have some little ready cash. And so Earl said, 'Fine, write it up.' Mr. Sawyer began to write it up. He did ask some questions, but he did not go through the application like he says he did.

"Q Did Mr. Sawyer—Excuse me. Did your husband mention the name of Dr. Newsome at any time in response to these questions from Mr. Sawyer?

"A Yes, sir.

\*    \*    \*    \*    \*    \*

"Q State what your husband said with respect to going to see Dr. Newsome.

"A During the taking of this application, Mr. Sawyer said, 'Earl, have you seen a doctor recently?' Earl said, 'Yes, I have; my family doctor, Dr. Newsome.'

"Q Now, at any time during the discussion with Mr. Sawyer did Mr. Sawyer say anything to Earl about drinking?

"A He cautioned him three times not to drink before he went for his physical.

"Q Did he say why?

"A He said, 'It will run your blood pressure up.'

958

"Q When you say 'three times,' was it three times in a row or was it separated or how was it?

"A On three different occasions during the course of the conversation he said, 'Now, Earl, remember don't drink, not even anything before you go take your physical.'"

The agent admitted that he initiated the suggestion that Mr. Renn buy the new family-type policy, saying:

"Q It was your suggestion to them that they buy this policy, isn't that right?

"A Yes, because I asked him if his wife had insurance, and he said no, she quit her job, and she had group at Stross's where she worked. And then I asked him if he had any outside the mill, and he said no, he didn't. And so then I said, 'Well, loans are kind of hard to pay off, and you have a mortgage here on the house, so it would be good if you probably get a family plan and cover yourself and your wife and your youngster and help cover the mortgage.'"

The agent testified that he made several appointments with a physician for Renn to take a physical examination and that Renn "failed to show up" for at least two appointments. The first insurance application with regard to the policy in suit had been signed about March 27, 1962. After Renn had failed to keep his appointments with the physician, the agent destroyed the first application and prepared a second application which was signed May 7, 1962. Renn then successfully passed a physical examination. Five false answers concerning alcoholism appear in the second application, all of which are in the handwriting of the agent. Renn also gave false answers to the examining physician concerning his problems and habits with alcoholism.

The agent testified that he was not sure that he asked Renn all the questions on the application form. He stated that he "probably" asked Renn if he had been drunk in the last five years but he could not remember with certainty. However the agent testified that he positively did not know that Renn was an alcoholic at the time he signed the application for the policy in suit.

We hold that there is evidence in the record from which the jury could have concluded that the agent had knowledge of the falsity and fraud of the answers on the application form and that the insurance company did not clearly prove the contrary within the meaning of Ohio Revised Code § 3911.06.

We further hold that the District Court did not err in declining to set aside the verdict and to render a judgment n.o.v. in favor of the insurance company. Finkle v. Western & Southern Life Insurance Co., 111 Ohio App. 407, 172 N.E.2d 311, 14 Ohio O.2d 416.

We find New York Life Insurance Co. v. Goerlich, 11 F.2d 838 (6th Cir.), relied upon by the insurance company, to be distinguishable on its facts from the present case. All five of the false answers involved here relate to one subject, i.e., the drinking habits of the insured and the consequences related thereto. In Goerlich, the false answers related to several subjects, any one of which was a ground to void the insurance policy.

The most serious question presented on this appeal is whether the District Court abused its discretion in denying the motion of the insurance company for a continuance on the ground that the agent who sold the policy had suffered a heart attack and was unable to testify as a witness in open Court. The discovery deposition of the agent, comprising thirty-five pages in the printed appendix, was read to the jury. We think that a continuance ordinarily should have been granted in such a situation. In the present case the deposition of the agent, which was generally favorable to the insurance company, was quite comprehensive. The attorney for the insurance company was unable to specify any testimony that would be offered by the agent in person other than what already was in his deposition.

The District Judge rendered the following memorandum opinion setting forth his reason for refusing to grant a continuance:

"Defendant has filed a motion for continuance on what normally would be good ground, absence for medical reasons of a material witness.

"In this case the witness is Mr. Ward Sawyer, defendant's agent, and almost the sole question in the case is whether, on behalf of the company, the agent knew of the alcoholic status of the plaintiff's decedent.

"However, the witness has been deposed. Furthermore, the defendant's counsel does not contend that the deposition fails to cover anything he would like to bring out. On top of that, plaintiff's counsel stands ready to agree to stipulate what the witness would say if present in Court in question on some point not covered in the deposition. Plaintiff's counsel also indicated willingness to permit defendant's counsel to call the supervisor of the witness and the Court indicated latitude would be allowed in examining on such things as the record of faithfulness and general demeanor of the witness.

"The medical certificate, attached hereto, indicates that the witness may never be able to come to Court. A further consideration is that this case has been assigned more than once and is one of the oldest cases on the docket.

"On the other hand, there is an advantage in having a witness in person before the jury, especially a good one.

"A motion for continuance is, of course, addressed to the discretion of the Court, which a judge is advised to exercise carefully, in recognition that discretion is vested largely because the situation does not admit of definite rules. The exercise of the discretion requires the balancing of reasons for and against the granting of the motion, and in this instance the decision is to deny the motion, which incidentally was not untimely, but could have been filed a day or two before it was."

The District Judge instructed the jury as follows concerning the absence of the agent:

"You were instructed at that time and I will tell you again that Mr. Sawyer was not in court because of illness. That is one reason it was permitted to read his deposition instead of requiring his attendance. As to his credibility, as in the case of the others, you are the sole judges. Since he was not present for you to observe personally, you can only do that by considering the reasonableness of his testimony and his interest in the sale of the insurance and the outcome of this litigation, if such you find there was present. You are not to give any additional weight to his testimony simply because he was ill and not able to be present in court. On the other hand, no conclusion adverse to the insurance company should be drawn because of his absence."

Under the circumstances we hold that the District Judge did not commit reversible error in refusing to grant a continuance.

Affirmed.